## Texas Employers' Insurance Association v. Tyra Ellison Holmes.

No. A-815. Decided June 19, 1946.
Rehearing overruled October 9, 1946.
(196 S. W., 2d Series, 390.)

*Buford, Ryburn, Hincks, Ford, & Charlton* and *Clarence Guttard*, all of Dallas, and *Black, Graves & Stayton* and *Charles L. Black*, all of Austin, for appellant.

The judgment of the district court is based upon a plainly erroneous construction of the applicable statute. Simmons v. Arnim, 110 Texas 309, 220 S. W. 66; Petroleum Casualty Co. v. Seale, 13 S. W. (2d) 364; Fire Ass'n of Philadelphia, v. Love, Comr., 101 Texas 376, 108 S. W. 158.

Approval of the construction of a statute by the Legislature. Western Indm. Co. v. Milam, 230 S. W. 825; Maryland Casualty Co. v. Ferguson, 252 S. W. 854; United States Fid. & Guar. v Flanagan, 134 Texas 374, 136 S. W. (2d) 210.

Administrative construction is entitled to no weight when it is in conflict with judicial construction. 50 Am. Jur. 311; Whittemore v. People, 227 Ill. 453, 81 N. E. 427.

*White and Yarborough* and *Donald V. Yarborough,* of Dallas, for appellee.

MR. JUSTICE SHARP, delivered the opinion of the Court.

This case is before us on a certified question from the Court of Civil Appeals at Dallas. The case was tried in the district court on an agreed statement of facts. Counsel for appellant and for appellee have both agreed that this suit involves the construction of Section 12 of Article 8306, R. C. S., known as the Workmen's Compensation Law. The essential facts are stated in the certificate of the Court of Civil Appeals, and in substance are as follows:

(1) That on January 4, 1944, Tyra Ellison Holmes was employed as a welder at a wage of $125.00 a week by E. B. Snead, who was a subscriber to the Workmen's Compensation Insurance Law of Texas and carried his compensation insurance with the Texas Employers' Insurance Association; and that this insurance was in full force and effect on January 4, 1944, and covered Holmes as well as other employees of Snead on that date.

(2) That on January 4, 1944, while working in the course of his employment in Dallas County, Texas, an acetylene cutting torch, which Holmes was using to cut a small container attached to a 500 gallon tank, ignited oil in the tank, which severely burned Holmes' right leg, leaving a scar over an area of six

inches long and five or six inches wide. The burn was of the third degree. It caused Holmes to be hospitalized eleven days, and has left him with scar tissue in the burned area and he feels a dull pain in his right leg when he stands on same and uses it a full day. That on March 1, 1944, Holmes went back to work as a welder for Snead at $125.00 per week, and he has continued in that employment at the above wages six to seven days a week and working eight to fourteen hours each day.

(3) That Holmes was paid two weeks' compensation at the rate of $20.00 per week.

(4) That Holmes sustained a specific injury to his right leg, which resulted in his total incapacity to work for eight weeks, followed by a permanent 35 per cent partial loss of the use of his right leg. It is agreed that the compensation period is the 200 week period provided in Section 12 of Article 8306 for the partial loss of use of a leg, and that Holmes' average weekly wage on the date that he sustained his injury was $95.24.

(5) That the question involved is one of law, namely, the correct method of calculating the amount of compensation due weekly for permanent, partial loss of use of a specific member, which involves the construction of Section 12 of Article 8306.

(6) That the district court, sitting without a jury, found that Holmes was "entitled to recover eight weeks' compensation at the rate of $20.00 per week for total loss of use of his right leg and 192 weeks of compensation at the rate of $20.00 per week for 35 per cent permanent partial loss of use of his right leg, totaling $4,000.00, less $40.00 for two weekly compensation payments heretofore made, leaving a balance of compensation accrued and to accrue of $3,980.00."

The judgment of the trial court ordered that Holmes recover from Texas Employers' Insurance Association the sum of $3,936.37, with six per cent interest per annum thereon from the date of such judgment.

We quote as follows from the certificate of the Court of Civil Appeals:

"Texas Employers Insurance Association has appealed to this court, contending that the District Court erred in its method of calculating the weekly compensation payments for perman-

ent partial loss of use of a specific member; and here refer particularly to the latter part of Section 12, reading: 'The compensation paid therefor shall be sixty per cent of the average weekly wages of the employes but not to exceed $20.00 per week, multiplied by the percentage of incapacity caused by the injury for such period not exceeding three hundred weeks as the board may determine.'

"The District Court's calculation is in conflict with the decisions of the Courts of Civil Appeals in the following cases: Western Indemnity Company v. Milam, 230 S. W. 825 (writ refused); Millers' Indemnity Underwriters v. Cahal, 257 S. W. 957; Glenn v. Industrial Accident Board, 184 S. W. (2d) 302 (reversed on other grounds by Supreme Court, 195 S. W. (2d) 805); Zurich General Accident & Liability Insurance Company, Ltd. v. Thomas, 187 S. W. (2d) 689. The District Court's holding is also contrary to the first opinion delivered by the Supreme Court in Industrial Accident Board v. Glenn, No. A-439 on the docket of the Supreme Court, delivered April 19, 1945. However, it is in accord with the second opinion in Industrial Accident Board v. Glenn, (184 S. W. (2d) 302) delivered July 19, 1945, and with the decisions of the Courts of Civil Appeals in the following cases: Maryland Casualty Company v. Ferguson, 252 S. W. (2d) 854 (writ refused), Dohman v. Texas Employers' Insurance Association, 285 S. W. 848."

Because of the conflict of decisions by the Courts of Civil Appeals, and because of the final opinion in the case of Industrial Accident Board v. Glenn, 144 Texas 378, 190 S. W. (2d) 805, delivered November 14, 1945, which withdrew both former opinions and left the question undecided, the Court of Civil Appeals certified the following question:

"Was the District Court correct in calculating the weekly compensation to be paid to the employee, Tyra Ellison Holmes, for permanent 35% partial loss of use of his right leg to be $20.00 per week instead of 35% of $20.00 or $7.00 per week?"

The certificate points out clearly the conflicting constructions placed upon the Workmen's Compensation Law by the Courts of Civil Appeals as well as by this Court. Unquestionably the law is not free of ambiguity, or there would not have been so many conflicting constructions of certain provisions of the law. Both constructions cannot be correct and both cannot stand. The question presented requires this Court to decide which construction is correct and must be followed in the future. Therefore the pro-

visions embraced in the law must be re-examined, in order to ascertain the purpose of the law, the intention of the Legislature expressed therein, and to decide the correct construction to be given the law.

The Workmen's Compensation Law was enacted in 1917 to remedy certain conditions that had long existed between employees and employers. Both employees and employers were dissatisfied with the old system of litigation concerning suits brought for injuries, such litigation being expensive and ofttimes resulting in vexatious delays. The Workmen's Compensation Law was enacted mainly to do away with certain inflexible rules relating to the issue of negligence, accident, assumed risk, contributory negligence, and other like issues, in cases of injury or death resulting from accident to an employee in the course of his employment, and more equitably to distribute the economic burdens in such cases. It was intended by the enactment of this law to effect prompt and inexpensive settlements and to make the amount recoverable free of any uncertainty, and also that the compensation allowed to an employee for injuries would be awarded upon broader and more humane rules. The law has become a part of the industrial and economic structure created by modern conditions and development in practically all the leading nations of the world. 71 C. J., p. 250, sec. 16.

The Workmen's Compensation Law comprehensively describes the amount of damages and compensation to be allowed an employee for certain personal injuries sustained in the course of his employment. The law also created an Industrial Accident Board, and provided that *"All questions arising under this law, if not settled by agreement of the parties interested therein and within the provisions of this law, shall, except as otherwise provided, be determined by the Board."* (Emphasis ours.) Section 5 of Article 8307. In order to carry out the purposes of the law, the Texas Employers' Insurance Association was created. Article 8308.

Section 12 of Article 8306 is a very important section of the Workmen's Compensation Law, and is the section specifically involved here. The first paragraph of said section reads as follows:

"Sec. 12. For the injuries enumerated in the following schedule the employee shall receive in lieu of all other compensation except medical aid, hospital services and medicines as elsewhere herein provided, *a weekly compensation equal to sixty per cent*

*of the average weekly wages of such employee, but not less than*
*$7.00 per week nor exceeding $20.00 per week, for the respective*
*periods stated herein, to-wit:* * * *"* (Emphis ours.) After this
paragraph some nineteen specific parts of the body for which
compensation is provided are listed, and then follows this para-
graph:

*"In the foregoing enumerated cases of permanent, partial in-*
*capacity, it shall be considered that the permanent loss of the*
*use of a member shall be equivalent to and draw the same com-*
*pensation as the loss of that member."* (Emphasis ours.) Be-
tween the two paragraphs quoted above there is included the
compensation schedule for the loss of a leg. After the latter
paragraph quoted above there are seven paragraphs which are
not quoted, and then an eighth paragraph, which reads as
follows:

*"In all other cases of partial incapacity,* including any dis-
figurement which will impair the future usefulness or occupa-
tional opportunities of the injured employee, compensation shall
be determined according to the percentage of incapacity, taking
into account among other things any previous incapacity, the
nature of the physical injury or disfigurement, the occupation
of the injured employee, and the age at the time of injury. *The*
*compensation paid therefor shall be sixty per cent of the aver-*
*age weekly wages of the employees but not to exceed $20.00*
*per week, multiplied by the percentage of incapacity caused by*
*the injury for such period not exceeding three hundred weeks*
*as the board may determine.* Whenever the weekly payments
under this paragraph would be less than $3.00 per week, the
period may be shortened, and the payments correspondingly in-
creased by the board. [Acts 1923, p. 386.]" (Emphasis ours.)

The trial court found that the amount of compensation due
Holmes, resulting from his injury, totaled the sum of $4,000.00,
less certain weekly payments theretofore made, leaving a bal-
ance of compensation accrued and to accrue of $3,980.00, and
entered judgment for Holmes in the sum of $3,936.37. Appel-
lant contends that the trial court erred in its calculation as to
the amount that Holmes was entitled to recover, and that the
sum due him for his injuries is the sum of $1,400.00.

Appellant also contends that:

"The compensation payable to appellee must be calculated ac-
cording to the following formula as stated in the concluding
part of Section 12 of Article 8306:

" 'The compensation paid therefor shall be sixty per cent of the average weekly wages of the employee *but not to exceed $20.00 per week,* multiplied by the percentage of incapacity caused by the injury for such period not exceeding three hundred weeks as the board may determine.' "

Appellant further contends:

"The statute requires the following:

"1. That the 'average weekly wages of the employee' be ascertained.

"2. That this figure be multiplied by sixty per cent.

"3. That if the result is higher than $20.00, then that it be reduced to $20.00.

"4. That the result thus arrived at be mltiplied by 'the percentage of incapacity.'

"5. That this final result be paid for such period not exceeding three hundred weeks, 'as the Board may determine.' "

Appellee, on the other hand, contends that the calculation made by the trial court is correct.

The courts have generally held that Workmen's Compensation Acts must be given a liberal construction, in order to effectuate their purposes. See 71 C. J., pp. 345-348, sec. 65, and the authorities cited in the footnotes, and 28 R. C. L., p. 755, sec. 50.

■ This Court has uniformly held that our Workmen's Compensation Law is a remedial statute, which should be liberally construed, with a view to accomplish its purposes and to promote justice. Huffman v. Southern Underwriters, 133 Texas 354, 128 S. W. (2d) 4; Cassell v. United States Fidelity & Guaranty Co., 115 Texas 371, 283 S. W. 127, 46 A. L. R. 1137; 4 Texas Law Review 537; Lumbermen's Reciprocal Ass'n v. Behnken, 112 Texas 103, 246 S. W. 72, 28 A. L. R. 1402; Federal Surety Co. v. Ragle (Tex. Com. App.), 40 S. W. (2d) 63; see 45 Tex. Jur., p. 363, sec. 7.

Furthermore, the rule is now generally accepted that compensation laws are to be construed liberally for the protection of employee. 71 C. J., p. 351, sec. 66 B; Id., p. 793, sec. 517. In construing our Workmen's Compensation Law, the courts of this State have uniformly announced the foregoing rule. United

States Casualty Co. v. Hardie (Tex. Com. App.), 299 S. W. 871; Lumbermen's Reciprocal Ass'n v. Behken, supra; McClure v. Georgia Casualty Co. (Tex. Com. App.), 251 S. W. 800; Huffman v. Southern Underwriters, supra; Texas Employers' Ins. Ass'n v. Volek (Tex. Civ. App.), 44 S. W. (2d) 795 (affirmed, Tex. Com. App., 69 S. W. (2d) 33, cert. denied 293 U. S. 598, 55 S. Ct. 116, 79 L. Ed. 691).

In the case of United States Casualty Co. v. Hardie, supra, it was said: "In view of the fact that the Workmen's Compensation Law arbitrarily restricts the rights of employees who come within its provisions, it has been the policy of the courts of this state to give as broad and liberal construction of such act in favor of the employee as the terms of the act will permit. Lumbermen's Reciprocal Ass'n v. Behnken, 112 Texas 103, 246 S. W. 72, 28 A. L. R. 1402; McClure v. Georgia Casualty Co. (Tex. Com. App.), 251 S. W. 800."

The sharp conflict of opinion arises over the construction of that part of the Act which reads, "not to exceed $20.00 per week." We find that substantially the same language is used in Sections 8, 10, 11, and the first paragraph of Section 12, in fixing the amount of recovery for each week. Thus it is seen that the maximum amount allowed for weekly compensation in all the sections of this Article where it is mentioned is $20.00. The Act should be construed as a whole, in order to secure the benefits intended by its enactment. 39 Tex. Jur., p. 209, sec. 113.

The plan embodied in the Workmen's Compensation Law is a radical departure from the old method of settling claims and disputes between employees and employers in the industrial world, and it met powerful opposition. In view of the scope and purpose of the workmen's Compensation Law, it is but natural to have conflicting views as to the construction of its provisions. The tendency of our early decisions was to give the Act a strict construction, but later decisions gave the Act a more liberal construction. The courts of this State, as well as federal courts, have handed down conflicting opinions regarding the construction of certain provisions of this Act. The Court of Civil Appeals in its certificate has pointed out the conflict of decisions in certain opinions of the Courts of Civil Appeals, as copied above. The Court of Civil Appeals at Beaumont decided the cases of Western Indemnity Co. v. Milam, 230 S. W. 825 (writ refused), Millers' Indemnity Underwriters v. Cahal, 257 S. W. 957, and Dohman v. Texas Employers' Ins. Ass'n, 285 S. W. 848. In the

Milam and Cahal cases that court held in accord with the contentions urged by appellant in this case. The Dohman case was decided after the decisions in the other two cases just mentioned were handed down, and the opinion in the Dohman case construed the law the same as the trial court did in this case. However, no mention was made in that case of the prior holdings of that court in the Milam and Cahal cases. The decision in the Milam case was rendered in 1921, and in 1923 the decision of the Court of Civil Appeals at El Paso in the case of Maryland Casualty Co. v. Ferguson, 252 S. W. 854, was directly opposite to the decision in the Milam case. It will be observed that this Court refused a writ of error in the Ferguson case, and the Court of Civil Appeals in the Dohman case followed the judgment in the Ferguson case in construing the Act, and said: (285 S. W. (2d) 851.)

"This is the rule followed by the Industrial Accident Board, and the courts will follow the construction placed upon the act by the board, unless clearly wrong. Maryland Casualty Co. v. Ferguson, supra."

Appellant contends that the language used in this law is so plain that reasonable minds cannot differ as to its meaning, and that it should be construed as contended for by appellant. However, the conflict in the opinions rendered by the courts in construing this law, to our minds furnish indisputable proof that its meaning is not free of ambiguity.

In order to see if there is a basis to support the judgment of the trial court, let us look at the decisions of the courts, the decisions of the Industrial Accident Board, and the actions of the Legislature, relating to this part of the statute. As stated, the law was originally enacted in 1917. Since its enactment, the Industrial Accident Board, the tribunal specifically created by the law to determine question arising under this law, has uniformly construed the part of the law involved here the way the trial court construed it in this case. Then in 1923, in the Ferguson case, the Court of Civil Appeals construed the Act in harmony with the construction given it by the Industrial Accident Board, and this Court approved that opinion by refusing a writ of error. The holding in the Ferguson case was followed later in the Dohman case; and the Circuit Court of Appeals, in 1928, in the case of Maryland Casualty Co. v. Laughlin, 29 Fed. (2d) 343, followed the decisions in the Ferguson and Dohman cases.

■ If a statute is ambiguous and susceptible of more than one

construction, there are certain well-settled rules which govern its construction. In the dissenting opinion in the case of Industrial Accident Board v. Glenn, 144 Texas 378, 190 S. W. (2d) 805, 808, Mr. Justice Simpson gives the following rules for the construction of such a statute:

"First, the practical interpretation of the Act by the agency charged with the duty of administering it is entitled to the highest respect from the courts. And this is especially so when that interpretation has been long continued and uniform. Maryland Casualty Co. v. Ferguson, supra; Dohman v. Texas Employers' Ins. Ass'n, supra; 39 Tex. Jur. 235 et seq.; 42 Am. Jur. 392 et seq. Second, the Act is to be given a liberal construction in favor of the injured employee in order to give the relief intended and to effectuate the beneficient purposes of the legislation. Texas Employers' Ins. Ass'n v. Volek (Tex. App.), 44 S. W. (2d) 195 (affirmed, Tex. Com. App., 69 S. W. (2d) 33, cert. denied 293 U. S. 598, 55 S. Ct. 116, 79 L. Ed. 691); 45 Tex. Jur. 363 et seq."

There is another well-settled rule to guide us in the construction of a statute which is uncertain and ambiguous, and it is stated in 39 Tex. Jur., p. 266, sec. 141, as follows:

"Where a statute which has been construed, either by a court of last resort or by executive officers, is re-enacted without any substantial change of veribage, it will continue to receive the same construction."

Section 12 of the Act under consideration was amended by the Legislature in 1923, and the Act was further amended in 1927, 1931, 1939, and 1941. The Legislature is presumed to have known the construction given this statute by the Industrial Accident Board and the courts, and by thus amending the statute at intervals in the manner above stated, the Legislature endorsed the construction theretofore given the statute by the Industrial Accident Board. Also, by the adoption of the Revised Civil Statutes of 1925 the Legislature left no doubt about its construction of this Act when it re-enacted Section 12 without change, after its construction by the Industrial Accident Board and the refusal of a writ of error by this Court in the Ferguson case. The construction given an original Act should be regarded as having been brought forward in amendments to the Act, if the amendments have not obviously changed such construction, and the construction to be given a re-enacted statute should be

the same as that given to the original Act, and a different construction will be given only for impelling reasons. Texas Fidelity & Bonding Co. v. City of Austin, 112 Texas 229, 246 S. W. 1026, Cassell v. United States Fidelity & Guarantee Co., 115 Texas 371, 283 S. W. 127, 46 A. L. R. 1137, 4 Texas Law Review 537; International Travelers' Ass'n v. Bettis, 120 Texas 67, 35 S. W. (2d) 1040; Patton v. Home Mut. Life Ins. Co., 143 Texas 373, 185 S. W. (2d) 420; 39 Tex. Jur., pp. 266-268, sec. 141, and the decisions in the footnotes. It is quite clear that this case presents no convincing reason for a construction of the Act under consideration different from that heretofore given it.

■ We have pointed out the language used in Sections 8, 10, 11, and 12, in fixing the amount of recovery for each week. In order to arrive at the legislative intent, the language used in all of the sections should be liberally construed. The first paragraph of Section 12 provides for "a weekly compensation equal to sixty per cent of the average weekly wages of such employee, but not less than $7.00 per week nor exceeding $20.00 per week." Section 11 refers to compensation for partial incapacity, and contains the proviso, "but in no case more than $20.00 per week." The last paragraph of Section 12 contains the proviso, "but not to exceed $20.00 per week."

In the recent case of Associated Indemnity Corporation v. McGrew, 138 Texas 583, 160 S. W. (2d) 912, the construction of the language used in Section 11 was involved. Mr. Justice Brewster wrote the opinion of this Court in that case, and held that the $20.00 is a limitation on the final maximum weekly compensation, and not a basis or formula for computing compensation.

Attention is called in the certificate to the various opinions rendered in the Glenn case. In the opinion of the Court of Civil Appeals in the Glenn case, published in 184 S. W. (2d) 302, and in the original opinion of this Court, dated April 18, 1945, the opinion in the case of Fidelity Union Casualty Co. v. Munday (Tex. Com. App.), 44 S. W. (2d) 926, is the principal authority relied upon to sustain the conclusion reached by both courts. The Munday case was decided in 1932. If that case definitely settled the construction of the law under consideration, it is significant that the Industrial Accident Board continued its construction otherwise, and the Legislature did not amend the law in such a manner as to show its disapproval of the construction given it by the Industrial Accident Board and to approve the Munday decision.

Mr. Justice Simpson, in his dissenting opinion in the Glenn case, already referred to, in analyzing the Munday case said:

"In deciding this cause, the Court of Civil Appeals took the view that the case of Fidelity Union Casualty Co. v. Munday (Tex. Com. App.), 44 S. W. (2d) 926, compelled a different conclusion. I do not so regard it. In that case, the Fidelity Union Casualty Company was urging that proof of economic incapacity, i. e., impairment of earning capacity, as distinguished from physical disability, was necessary to a recovery for 'a temporary total loss of the use of a hand, or a permanent partial loss of the use of that member.' But the court, in holding that the injury was compensable under that part of Section 12 which is quoted in its opinion rather than under other provisions of the Act, rejected that contention and held in effect that proof of physical disability was sufficient. In stating that 'in conference with the Supreme Court, we have been authorized to declare all holdings to the contrary, in other cases, overruled,' the Commission of Appeals was referring to cases which had held that injuries such as that involved in the Munday case were not compensable under Section 12. See, for example, Texas Employers' Ins. Ass'n v. Price (Tex. Civ. App.), 300 S. W. 667 (writ dismissed 117 Texas 173, 300 S. W. 672).

"A misunderstanding of the holding in the Munday case arose, as I appraised it, from this situation: The trial court had allowed Munday $20.00 a week for 15 weeks of temporary total loss of the use of his hand and $15.00 a week for 135 weeks of 75% loss of the use of the same hand. The Court of Civil Appeals reformed the judgment to allow recovery of $15.00 for 150 weeks. 26 S. W. (2d) 676. Now in fact, 60% of Munday's average weekly wages exceeded $20.00. Counsel for both Munday and the Fidelity Union Casualty Company proceeded erroneously upon the assumption that $20.00 was the correct basic figure of which 75% should be taken in arriving at Munday's compensation for the partial loss of the use of his hand. The court was not asked to say what the correct basic figure was, the arguments of the parties on file in the case do not raise the point, and it was not in any sense up for decision. Accordingly, the Munday case is not authority for the correctness of the construction of the statute urged by Glenn and the compensation carrier here.

"The argument is advanced that under the Industrial Accident Board's construction, two employees working side by side, with average weekly wages of $75.00 each, might be injured in

the same accident, one losing a hand entirely and the other suffering only a 45% incapacity to his hand, yet both would be compensated at the same rate. This is true, not because of any misinterpretation of the statute, but because the Act prescribes certain maximums of compensation above which payment will not be awarded no matter how high the wages go. Illustrative of this situation, let us suppose the same two workmen, each with an average weekly wage of $75.00, are injured in the same accident, one suffering a 50% and the other a 75% permanent partial incapacity. The weekly compensation of each shall be equal, under Section 11 of the Act, to 'sixty per cent of the difference between his average weekly wage before the injury and his weekly wage earning capacity during the existence of such partial incapacity, but in no case more than $20.00 per week.' The difference between the weekly wages of the first workman before the injury and afterwards is $37.50; in the case of the second workman, the difference is $56.25. Sixty per cent of each figure produces an amount in excess of $20.00, so under the Act both receive the same compensation, the $20.00 weekly maximum, although one is injured 50% more than the other. Associated Indemnity Corp. v. McGrew, 138 Texas 583, 160 S. W. (2d) 912. Like illustrations migh be drawn from the situation of two workmen totally and permanently incapacitated, one with a $50.00 and the other with a $100.00 average weekly wage. Both would receive the same compensation, the $20.00 weekly maximum for 401 weeks, although at the time of the accident one was making twice the wages of the other. Section 10, Article 8306."

We have carefully re-examined the provisions of this law in the light of its history relating to the purposes sought to be accomplished by its enactment. The influential factors that caused the adoption of this class of legislation are too well known to be repeated here. The plan is no longer an experiment and its principles are now embodied in our Workmen's Compensation Law, which is considered one of our most useful laws. If it is to meet the conditions for which it was enacted, it must be construed in accordance with certain fundamental rules uniformly announced and applicable to such statutes. The trial court having followed the construction uniformly given this statute by the Industrial Accident Board, and the construction given the statute by the courts in the Ferguson case and other cases, which construction had received the approval of the legislature by the re-enactment of this statute unchanged in 1925, that court therefore applied the correct rule in fixing the amount recoverable in this case.

The certified question is answered, "Yes."

Opinion delivered June 19, 1946.

Rehearing overruled October 9, 1946.

(NOTE: For the opinion of the Court of Civil Appeals upon receipt of this answer see 196 S. W. (2d) 1023.)

MR. JUSTICE SMEDLEY, concurring.

For two reasons, to be briefly stated, I concur in the affirmative answer to the question certified by the Court of Civil Appeals.

The first reason is that this Court has never directly decided the question except by its refusal of the application for writ of error in Maryland Casualty Company v. Ferguson, 252 S. W. 854, and by that refusal the Court necessarily gave to the last paragraph of Section 12 of Article 8306 the construction that the majority of the Court gives it in this cause.

In the Ferguson case the average weekly wages of the employee were $86.00 and the percentage of permanent partial disability of his arm was 25%. He was awarded by the Board and by the trial court compensation of $12.90 per week. The insurer contended that the compensation should have been $3.75 per week, that is, 25% of $15.00, which was then the maximum weekly compensation instead of $20.00. The Court of Civil Appeals overruled the insurer's contention and affirmed the trial court's judgment. The three opinions of that court show disagreement among the members of the court, but there can be no mistake as to the conclusion and judgment to which all agreed. It was that the $15.00 per week used in the last paragraph of Section 21 of Article 5246 of Vernon's Texas Civil Statutes Supp. 1918 (which, except in prescribing a maximum of $15.00 per week instead of $20.00 per week is the same as the last paragraph of Section 12 of Article 8306) fixed the maximum compensation and was not intended as a factor in computing the amount of the compensation. The application for writ of error filed in the Ferguson case by Maryland Casualty Company contained but three assignments of error, each of which complained that the Court of Civil Appeals erred in so construing the statute as to award the employee $12.90 instead of $3.75 per week. The contention was vigorously argued and no other contentions were presented. The Milam case was urged as

an authority. The refusal of the application for writ of error in the Ferguson case was necessarily a decision of the very question certified in this case.

.This Court did not, in its refusal of the application for writ of error in Western Indemnity Company v. Milam, 230 S. W. 825, pass upon the question presented in this case. Milam, who was appellee, contended by cross assignment in the Court of Civil Appeals that "the amount of compensation for partial disability should be determined by multiplying 60% of the average weekly wages by the percentage of disability, limiting the compensation to $15.00 per week." The Court of Civil Appeals overruled the cross assignment of error and gave the statute the construction for which appellant contends herein. Application for writ of error was filed by Western Indemnity Company and it made no complaint as to the method of determining the amount of the weekly compensation. Milam filed no application for writ of error. The question in which we are interested herein was not presented to the Court in the Milam case by the application for the writ of error, and the refusal of the application for the writ of error, and the refusal of the application was not a decision of the question, although the Court of Civil Appeals had ruled upon it. At that time the statute had not been amended so as to provide that in all cases where the judgment of the Court of Civil Appeals is a correct one and where the principles of law are correctly determined, the Supreme Court shall refuse the application. See Acts Regular Session, 40th Legislature (1927) Chapter 144, pp. 214-215.

The question presented herein was not decided by the Court in Fidelity Union Casualty Company v. Munday (Com. App.) 44 S. W. (2d) 926. In that case the employee suffered permanent partial loss of the use of his hand to the extent of 75%, and the trial court's judgment awarded him compensation for that loss at the rate of $15.00 per week. The compensation must have been computed by the trial court according to the method advocated by appellant herein; otherwise he would have been awarded the maximum of $20.00. The opinion in the Munday case contains no discussion of the amount of the weekly payments awarded or of the method of calculating it. Apparently assuming the correctness of the amount awarded, the parties neither presented nor discussed the question in their briefs. The Court was not called upon to decide it. The opinion was devoted almost wholly to giving reasons for rejecting the insurer's contention that no compensation could be recovered by

Munday without an affirmative showing that incapacity for work resulted from the injury.

Both Lumbermen's Reciprocal Association v. Pollard (Com. App.) 10 S. W. (2d) 982, and Petroleum Casualty Company v. Seale, (Com. App.) 13 S. W. (2d) 364, held that compensation for permanent partial loss of the use of a member of the body, in the one case a hand and in the other a foot, was payable under Section 12 of Article 8306, and that for such loss the amount of weekly compensation to be paid the employee was 60% of his average weekly wages multiplied by the percentage of incapacity of the member. The question in the instant case was not reached in those cases because in both of them 60% of the average weekly wages was less than $20.00.

My second reason for concurring in the affirmative answer to the certified question is that the answer conforms to the construction that has been given to the last paragraph of Section 12 of Article 8306 by the Industrial Accident Board.

In the Glenn case, 144 Texas 378, 190 S. W. (2d) 805, proof was made by undisputed evidence that the Board since 1918 has given that construction to that part of Section 12 of Article 8306 in its administration of the workmen's compensation law. The court may take judicial notice of the construction thus given to the law by the Board. Maryland Casualty Company v. Hendrick Memorial Hospital, 141 Texas 23, 28, 169 S. W. (2d) 969; Short v. W. T. Carter & Bro., 133 Texas 202, 211, 126 S. W. (2d) 953, and cases cited.

In my opinion the meaning of the part of the statute under construction is not so plain and clear as to preclude resort to administrative construction. Appellant may perhaps be correct in its contention that the last sentence but one in Section 12 of Article 8306 is a mathematical formula and unambiguous, i the language of that sentence is to be taken literally and read without reference to other parts of the statute. But the question whether a particular part or sentence of a statute is ambiguous is not to be determined solely from that part or sentence. "An ambiguity justifying the interpretation of a statute is not simply that arising from the meaning of particular words, but includes such as may arise in respect to the general scope and meaning of a statute when all of its provisions are examined." 50 Am. Jur., p. 209, Sec. 226. The text quoted is well supported by the cited case. Coosaw Mining Company v. South

Carolina, 144 U. S. 550, 561-563, 36 L. Ed. 537, 541-542. The rule is an application of the general principle thus stated by Sutherland: "A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole. Thus it is not proper to confine interpretation to the one section to be construed." Sutherland's Statutory Construction (3d ed.) Vol. 2, pp. 336-337, Sec. 4703. In Ellis County v. Thompson, 95 Texas 22, 32, 64 S. W. 927, the court said: "We cannot, however, consent to be confined to one section of the act in disregard of all other parts, *even if the language were unambiguous.*" (Emphasis added.)

The general purpose of the compensation act is to measure the weekly compensation by the average weekly wages, paying the injured employee 60% of his average weekly wages. Sections 8, 10, 11 and 12 of Article 8306, in prescribing the weekly compensation to be paid, measure it by the average weekly wages. Whether wisely or not, the employee making large wages, is paid on account of his injury a greater compensation than is paid to the employee who makes small wages. The Act also fixes the maximum weekly compensation to be paid in any event at $20.00. No matter how great the employee's average weekly wages may be, and no matter how severe his injury, the weekly payments to him are limited to $20.00. Repeatedly in the Act, in Sections 8, 10, 11 and 12 of Article 8306, the words "but not more than $20.00 per week," "but in no case more than $20.00 per week" or "not exceeding $20.00 per week" are used to fix a maximum weekly compensation. Nowhere in the Act, unless it be in the last paragraph of Section 12, is $20.00 or any other arbitrary sum, introduced as a factor in measuring or calculating the amount of the weekly payments.

When the words "but not to exceed $20.00 per week" are encountered in the sentence of Section 12 under construction, it is not unreasonable to assume that they are used, as they are used in all other parts of the Act, to prescribe the maximum weekly compensation that may be paid. If they are not so intended, then they perform a new and strange function, serving as a factor in calculating the amount of the weekly compensation, which in the first part of Section 12 and in all other sections of the Act is measured by 60% of the average weekly wages.

When the words "but not to exceed $20.00 per week" are

treated as a parenthetical expression intended to fix a maximum, all parts of the Act with respect to the amount of weekly compensation are harmonious, and the general plan of the Act to measure weekly compensation by the use of average weekly wages as the standard factor is followed throughout. The other construction, that for which appellant contends, is a departure from that general plan, and in many instances the use of that construction would reduce the weekly compensation far below what it would be if calculated by multplying 60% of the average wages by the percentage of incapacity. Under that construction an employee making very high weekly wages would often receive very small weekly compensation. For example, one making $90.00 per week and suffering an injury causing a 30% permanent loss of the use of an arm or leg would be paid, under appellant's construction, 30% of $20.00, that is, $6.00 per week. Under the other construction, that approved by the affirmative answer to the question certified, he would be paid $16.20 per week.

The argument is repeated in the briefs that an injustice would be done if the employee were paid for partial permanent loss of the use of a member as much as would be paid him for total permanent loss. This will occur when both 60% of the average weekly wages and 60% of the average weekly wages multiplied by the percentage of incapacity of the member equal or exceed $20.00. The argument that this is unjust is based upon an erroneous conception of the function of the $20.00 maximum. It is not intended to pay the injured employee for his injury or afford him full compensation. It does not and cannot work equally. It is merely a maximum weekly payment fixed by the Legislature.

The conclusion reasonably follows from what has been said and for other reasons which are omitted in the interest of brevity, that the sentence in Section 12 to be construed in answering the certified question is of doubtful meaning or ambiguous. This being true, the construction followed for many years by the Industrial Accident Board in its administration of the Act is entitled to the highest respect and should be given controlling weight.

The position is taken in the dissenting opinion filed herein by Associate Justice Folley, that the last paragraph of Section 12 has no application to this case and that the decision of the question presented is controlled by preceding paragraphs of Sec-

tion 12. On that premise that opinion should have been a concurring opinion rather than a dissent. Throughout all of the first part of Section 12 the weekly compensation is measured by 60% of the average weekly wages, and in that part of the section there is no mention of $20.00 except as the maximum weekly payment. It is only in a literal construction of the last sentence but one of Section 12 that authority can be found in the Act for using the $20.00 as a factor in measuring the weekly compensation. Appellant relies upon that sentence for a negative answer to the certified question. The certificate from the Court of Civil Appeals calls for a construction of that sentence. The question certified should be answered.

Opinion delivered June 19, 1946.

MR. JUSTICE FOLLEY, dissenting.

I do not agree with the majority that the question certified should be answered in the affirmative, nor that the last paragraph of section 12 of article 8306 has any application in this case. On the contrary, I think that it has been definitely settled by prior decisions of this court that the question here involved is not controlled by that paragraph at all but by four other paragraphs of that section. They are as follows:

"For the injuries enumerated in the following schedule the employee shall receive in lieu of all other compensation except medical aid, hospital services and medicines as elswhere herein provided, a weekly compensation equal to sixty per cent of the average weekly wages of such employee, but not less than $7.00 per week nor exceeding $20.00 per week, for the respective periods stated herein, to-wit:

"* * *

"For the loss of a leg at or above the knee, sixty per cent of the average weekly wages during two hundred weeks.

"* * *

"In the foregoing enumerated cases of permanent, partial incapacity, it shall be considered that the permanent loss of the use of a member shall be equivalent to and draw the same compensation as the loss of that member.

"* * * *

"In all cases of permanent partial incapacity it shall be considered that the permanent loss of the use of the member is equivalent to, and shall draw the same compensation as, the

loss of that member; but the compensation in and by said schedule provided shall be in lieu of all other compensation in such cases."

It must be kept in mind that we are dealing with a specific injury to claimant's leg which resulted in his total incapacity for 8 weeks, followed by a permanent partial loss of the use of the leg of 35 per cent. It was agreed that the compensation period is 200 weeks, which, incidentally, conforms to the period fixed in the second paragraph above quoted for the loss of the leg, and not to the maximum of 300 weeks provided in the last paragraph of section 12. His average weekly wages were $95.24. The trial court found that claimant was entitled to 8 weeks of compensation at the rate of $20.00 per week for the total loss of the use of his leg and 192 weeks of compensation at the rate of $20.00 per week for the 35 per cent. permanent partial loss of his leg. The question presented is whether the trial court correctly calculated the compensation for the partial loss of the use of his leg.

It will be noted that section 12 embraces nineteen specific injuries, followed by 5 concurrent specific injuries, each of which prescribes a definite number of weeks for the compensation period. All of these specified injuries I think are governed not by the last paragraph of section 12, but by the first paragraph thereof and such intervening paragraphs as become pertinent from the nature of the injury. However, it being practically impossible to forecast and include every conceivable injury of similar nature which might arise in the course of employment, the legislature no doubt added the last paragraph of section 12 in order to provide some reasonable compensation for such other injuries, less than general, as might occur but which were not included in the previous paragraph of the section. Such paragraph is as follows:

"In all other cases of partial incapacity, including any disfigurement which will impair the future usefulness or occupational opportunities of the injured employee, compensation shall be determined according to the percentage of incapacity, taking into account among other things any previous incapacity, the nature of the physical injury or disfigurement, the occupation of the injured employee, and the age at the time of injury. The compensation paid therefor shall be sixty per cent of the average weekly wages of the employees but not to exceed $20.00 per week, multiplied by the percentage of incapacity caused by the injury for such period not exceeding three hundred weeks

as the board may determine. Whenever the weekly payments under this paragraph would be less than $3.00 per week, the period may be shortened, and the payments correspondingly increased by the board."

It is evident from the reference to "all other cases of partial incapacity" in the opening words of the paragraph that its application is limited to those injuries not theretofore mentioned, which includes "any disfigurement which will impair the future usefulness or occupational opportunities of the injured employee." For the injuries thus included, but not specified by name, it is provided that the compensation shall be determined according to the percentage of incapacity and that in determining the same the board may take into account, among other things, "any previous incapacity, the nature of the physical injury or disfigurement, the occupation of the injured employee, and the age at the time of injury." Consequently, in determining the compensation for these "other cases of partial incapacity," certain factors are to be considered which are immaterial in determining the compensation for the injuries specified in other paragraphs of section 12. In other words, for such injuries as the loss of a leg or arm, or the loss of the use thereof, whether total or partial, as well as any other injury specified in the section, the compensation does not depend upon, nor is it affected by, any of the factors mentioned in the last paragraph, but the compensation remains the same for a definite term irrespective of these elements. The last paragraph further provides that the compensation shall be "sixty per cent of the average weekly wages of the employee but not to exceed $20.00 per week, multiplied by the percentage of incapacity caused by the injury for such period *not exceeding three hundred weeks* as the board may determine." (Italics supplied.) The compensation period so provided is not of a fixed and rigid duration as that for the injuries theretofore specified in the section, but is one of flexible and changing duration as the facts in each case may justify, ranging from none to a maximum of 300 weeks, which not only allows a greater period than that specified for the single injuries theretofore enumerated, but places a discretion in the board which it does not have with reference to the injuries specified. It is also provided that whenever "the weekly payments *under this paragraph* would be less than $3.00 per week, the period may be shortened, and the payments correspondingly increased by the board", which again segregates and differentiates this paragraph from any of the others which precede it. (Emphasis again supplied.)

It is therefore obvious that the last paragraph of section 12 is an independent provision intended to apply only to such cases of partial incapacity as are not specified in other portions of the section. If I may be permitted to speculate, when we have some injury less than general, such as the amputation of an ear or a nose, or where some similar injury or disfigurement not specified in the section impairs the future usefulness or occupational opportunities of an employee, then, and not until then, will the last paragraph of section 12 become pertinent.

That the injury here involved is not governed by the last paragraph of the section, but by previous paragraphs thereof, is no longer an open question in this state. This has been definitely settled by decisions which have the express or implied approval of this court, and all of which involve the same character of injury with which we are presently dealing. Lumbermen's Reciprocal Ass'n. v. Pollard, Tex. Com. App., 10 S. W. (2d) 982; Petroleum Casualty Co. v. Seale, Tex. Com. App., 13 S. W. (2d) 364; Texas Employers' Ins. Ass'n. v. Maledon, Tex. Com. App., 27 S. W. (2d) 151; Fidelity Union Casualty Co. v. Munday, Tex. Com. App., 44 S. W. (2d) 926.

In the Pollard case the claimant suffered 75 per cent. disability of his right hand and 65 per cent. disability of his right arm, each of which was permanent. The trial court rendered judgment for both injuries, the first covering 150 weeks and the second 50 weeks. The court of civil appeals held that since the claimant had lost neither hand nor arm, nor suffered the total loss of the use of either, the recovery could not be had under the specific injury provision of the statute, but should be governed by the last paragraph of section 12, as the majority opinion concludes in the instant case. The defendant insurance company contended that the compensation should have been fixed under the provisions of section 11 of article 8306. The Commission of Appeals held that neither contention was correct, but that the injury came under "next to the last paragraph of section 12 of article 8306," and quoted the same. Since the use of the plaintiff's arm was only impaired by reason of the injury to his hand, both of the judgments of the lower courts were reformed so as to allow a recovery for 75 per cent. of 60 per cent. of his average weekly wages for 150 weeks, which period of compensation was that fixed for the loss of a hand in the specific injury portions of section 12.

In the Seale case the claimant received an injury to his right foot resulting in permanent partial loss of the use thereof of

85 per cent. From the opinion of the Commission of Appeals and that of the Court of Civil Appeals, 4 S. W. (2d) 90, 91, it appears that the claimant was awarded judgment in the trial court "for 60 per cent. of his average weekly wages for 300 weeks, as in compliance with the last paragraph of section 12 of R. S. 1925, art. 8306." The following significant language is found in the opinion of the Court of Civil Appeals in that case:

"We think the pleadings and evidence thus outlined definitely and plainly take this case out of the class of 'specific injuries' scheduled in section 12, where appellant contends it alone should go, and bring it squarely within the 'other cases of partial incapacity,' as classified by the Commission of Appeals in the Moreno Case, supra, and for which the maximum period of 300 weeks' compensation is prescribed in the last paragraph of that section."

The theory thus expressed is identical with that of the majority opinion in this case with reference to the application of the last paragraph of section 12. With that thought in mind let us examine the opinion of the Commission of Appeals when the Seale case reached this court. From it we quote:

"We do not think the trial court submitted the issue made by the pleadings in this case. Most favorably construed, defendant in error's petition alleged only an injury to the foot. Having set out no other injury, the allegation that his injuries were permanent is referable to the specific injury alleged. * * *

"Under the pleadings, the court should have submitted separately the issues as to the duration and extent of defendant in error's injury to the specific member alleged, and also directed the jury to determine the percentage of incapacity sustained by reason of the injury to the foot, and in entering judgment should have awarded compensation under section 12 of the Workmen's Compensation Act (Rev. St. 1925, art. 8306, sec. 12).

"Under the pleadings, defendant in error was entitled to be compensated for a permanent partial incapacity to his foot. If the issue thus made by the pleadings had been properly submitted to the jury and a finding returned that the injury was partial and permanent, and the percentage of incapacity had been found, defendant in error would have been entitled to have received a sum equal to the percentage so found, multiplied by 60 per cent. of his average weekly wages for a period of 125 weeks.

"* * *

"The manifest injustice of the rule contended for by defendant in error is made apparent by the recovery permitted in this case. If one of his colaborers had been injured at the same time defendant in error received his injury, which had resulted in the amputation of his foot, or in the complete loss of the use thereof, the recovery would have been confined under the plain provisions of section 12 of the act, to 60 per cent. of his average weekly wages for a period of 125 weeks, while defendant in error, who suffered a lesser injury, was allowed the same amount of compensation for a period of 300 weeks. In other words, he has been allowed more than twice as much compensation for a permanent partial incapacity to his foot as his colaborer could have been allowed for the complete loss of the use of his foot. We do not think, when the act is considered as a whole, that we are justified in imputing to the Legislature an intention to work such an injustice and inequality upon those entitled to receive benefits under the act."

The opinion in the Seale case stated that the court was following the rule laid down in the Pollard case and recommended that both judgments of the courts below be reversed and the cause remanded for trial "not inconsistent with the views herein expressed," and the Supreme Court not only followed the recommendation of the Commission of Appeals but expressly approved "the holding of the Commission of Appeals on the questions discussed in its opinion." Therefore, this court has affirmatively committed itself to the proposition that the last paragraph of section 12 has no application to the kind of injury we now have under consideration.

In the Maledon case the claimant sustained the total loss of the use of his hand for 20 weeks which was followed by a permanent partial incapacity to the extent of 40 per cent. It was agreed in the trial court that the compensation rate was $13.85, which was 60 per cent. of his average weekly wages, and, further, that he was not entitled to compensation for the first week of disability under the then existing law. The recovery in the trial court was for 19 weeks at $13.85 for the total incapacity, and 40 per cent. of the compensation rate, or $5.54, for the permanent partial incapacity for a period of 131 weeks, the remainder of the period specified in section 12 for the loss of a hand. The court of civil appeals reached the conclusion that under sections 10, 11 and 12 of article 8306, and with particular reference to the last paragraph of section 12, the claimant was entitled to $5.54 for 300 weeks for his partial incapacity, and reformed

the judgment of the trial court and rendered judgment in keeping with its opinion in that respect. 11 S. W. (2d) 627. When the case reached this court the Commission of Appeals held that the claim was governed by the following portions of section 12: (1) The first paragraph of section 12; (2) the paragraph of such section specifying compensation of 60 per cent. of the average weekly wages during 150 weeks for the loss of a hand; and (3) next to the last paragraph of section 12. In keeping therewith the court reversed the judgment of the court of civil appeals and affirmed that of the trial court. That decision was expressly predicated upon the Pollard and the Seale cases.

In the Munday case the claimant sustained the total loss of the use of his right hand for a period of 15 weeks which was followed by permanent partial loss of the use of his right hand to the extent of 75 per cent. His wages were $10.00 per day. The trial court entered judgment for weekly compensation at the rate of $20.00 per week for 15 weeks for the total loss of the use of the hand and $15.00 per week for the 135 succeeding weeks of partial loss of its use, which was 75 per cent. of the amount allowed for the total loss of its use. That recovery was affirmed by the Commission of Appeals. It was held that the compensation for temporary total loss of the use of a member came under the same provisions of section 12 as that for permanent partial loss of the member, and for the same reasons announced in the Pollard, Seale and Maledon cases. The contention was made that nowhere in the workmen's compensation law is the temporary total loss of the use of a hand, or a permanent partial loss of the use of that member, made compensable in the absence of an affirmative showing of the fact that incapacity for work, of some degree or duration, resulted therefrom. That contention was overruled. The opinion quoted portions of section 12, not including the last paragraph, and then stated:

"With regard to a permanent partial loss of the use of a hand, it has been repeatedly held, in effect that such a loss comes within the purview of the *above provisions* and that payment of compensation each week, as there provided, is required to be made in the proportion that the use of the hand is permanently lost. Petroleum Casualty Co. v. Seale (Tex. Com. App.) 13 S. W. (2d) 364; Lumbermen's Reciprocal Ass'n. v. Pollard (Tex. Com. App.) 10 S. W. (2d) 982; Texas Employers' Ass'n. v. Maledon (Tex. Com. App.) 27 S. W. (2d) 151. That holding was expressly approved by the Supreme Court in the Seale Case, and impliedly approved in the other two. In conference with the Su-

preme Court, we have been authorized to declare all holdings to the contrary, in other cases, overruled." (Emphasis mine.)

From the language quoted we need not speculate as to what cases were intended to be overruled by the Supreme Court in the Munday case. The refusal of the writ of error by this court in Great American Indemnity Co. v. Stultz, 56 S. W. (2d) 200, furnishes the answer. In that case the claimant suffered the total loss of the use of his eye for 4 weeks which was followed by its permanent partial incapacity of 25 per cent: He contended that he was entitled to "compensation under the specific injury statute" for 300 weeks. The court of civil appeals overruled his contention and limited him to the period of 100 weeks specified in section 12 for the loss of an eye. The decision was based upon the Munday case and the opinion stated that if there was anything to the contrary in Travelers' Ins. Co. v. Richmond, Tex. Com. App., 291 S. W. 1085, that it had been overruled by the Munday case. The Richmond case, like the majority opinion in this case, held that compensation for the partial loss of a member was governed by the last paragraph of section 12. The Stultz case expressly disapproved the Richmond case and refused to follow it. Thus, by refusal of the writ of error in the Stultz case, this court again expressly approved the principle that compensation for injuries like the one here involved is governed by the antecedent paragraphs of section 12, and repudiated the theory that the last paragraph has any application.

In the Pollard, Seale, Maledon and Munday cases the employee sustained an injury to a specific member of his body resulting in permanent partial loss of the use of such member, which is precisely the situation in this case. In the Maledon and Munday cases the period of permanent partial incapacity was preceded by the total loss of the use of the member. For such total or partial loss these cases definitely decide that we must look not to the last paragraph of section 12 but to the antecedent paragraphs for the correct method of computing the compensation. For the total loss of the use of a member section 12 clearly provides that the compensation is the same as if the member had been amputated. No one seems to question that construction and the authorities mentioned definitely support it. The only difficulty presented is in determining the amount of compensation to be paid for permanent partial incapacity, particularly when 60 per cent. of the average weekly wages exceeds $20.00, as in this case. In other words, should we take 60 per cent. of $95.24 and multiply that by the percentage of incapacity, thus arriving at exactly $20.00 per week for the par-

tial incapacity, or should we multiply what the claimant would be entitled to for the complete loss of his leg, that is $20.00, by the percentage of incapacity (35 per cent.) and thus arrive at the sum of $7.00 per week? The answer to this question is also found in the Pollard, Seale and Munday cases.

After quoting next to the last paragraph of section 12, the opinion in the Pollard case states:

"* * Following this specific compensation for the loss of the use of a member, we think it was contemplated by the provision above quoted that, if a person lost the complete use of a member, it should be considered the same as if the member had been amputated, and further, that, if the person had a permanent partial incapacity to a member, he should receive the compensation provided in section 12 for the loss of the specific member *proportioned to the percentage of incapacity which the loss sustained would bear to the total loss of the member.*" (Italics supplied.)

From the Seale case the following paragraph is both interesting and illuminating:

"Under the terms of the Workmen's Compensation Act, defendant in error cannot, by alleging incapacity to labor on account of injuries received to his foot, be entitled to receive a greater compensation than *the percentage of his incapacity bears to the amount he would have been permitted to recover if he had sustained a complete loss of his foot.*" Any other construction of the act would permit an employee to recover more for the partial loss of the use of a member of his body than he could recover for the complete loss of the same. Such a construction of the act can only be arrived at by considering isolated portions thereof. In order to fairly arrive at the intention of the Legislature as to the compensation to be awarded an injured person, the act must be construed as a whole. When so considered, it is clear that it was never contemplated that one employee who has received a permanent partial incapacity to a specific member of the body should receive more compensation than another employee who has sustained a complete loss of the same member of the body. The result of so construing the act would do violence to the plainest principles of justice, and should not be indulged unless the language thereof compels such construction. This interpretation can be avoided by indulging the implication that a *permanent partial incapacity to a specific member of the body must be compensated at the same rate provided for*

*a loss of the member, multiplied by the percentage of incapacity found to exist."* (Emphasis supplied.)

In the Munday case is found other very significant language. There the recovery for the 75 per cent. partial incapacity was $15.00 per week, which was 75 per cent. of the amount allowed for the total incapacity of the member. From the wage scale of the claimant, as stated in the opinion, it is obvious that he would have been entitled to $20.00 per week for his partial incapacity if the method of computation urged by the majority herein is the correct one. After quoting pertinent paragraphs of section 12, which, as above stated, did not include the last paragraph of the same, the court makes this very relevant observation:

"* * * the payment of compensation as provided in the judgment of the trial court is, in all respects, in accordance with the *quoted statutory provisions, and the implications arising therefrom."* (Italics supplied.)

The "payment" thus alluded to included the $15.00 per week for partial incapacity, which was 75 per cent. of the $20.00 per week allowed for the total loss of the use of the member.

From the quotations next above, particularly those portions which are emphasized, it is affirmatively stated in unmistakable language that for partial incapacity a claimant is entitled to no greater compensation than the percentage of his incapacity bears to the amount he would have been permitted to recover if he had sustained a complete loss of the member, or, as otherwise stated, that "permanent partial incapacity to a specific member of the body must be compensated at the same rate provided for a loss of the member, multiplied by the percentage of incapacity found to exist." The amount due in this case for the complete loss of the use of the member is indisputably only $20.00 per week, and that amount multiplied by the percentage of incapacity (35 per cent.) results in $7.00 per week as the compensation due for the partial incapacity, which process follows the rule so clearly announced in the Pollard, Seale and Munday cases, and which was applied in one of them where 60 per cent. of the average weekly wages also exceeded $20.00 per week.

I am not concerned with the conflicting opinions in Western Indemnity Co. v. Milam, 230 S. W. 825, and Maryland Casualty Co. v. Ferguson, 252 S. W. 854. Those cases were decided long prior to the authorities above mentioned and if they contain

anything in conflict with the views herein expressed they have been overruled by the later decisions which have the express or implied approval of this court. I think this court is not only bound by these later decisions but under the doctrine of stare decisis should be bound by them; yet the majority opinion completely ignores their holdings.

Not only does the majority opinion ignore prior decisions of this court, but in my view it runs counter to the certain spirit and purpose of the workmen's compensation law, in that it grants a benefit in a case of this nature to an employee who receives high wages that is denied to one who receives low wages. When this law was enacted, and thereafter until recent months, the great bulk of employees received wages not exceeding $33 1/3 per week. That was the principal class of employees affected by the law. By limiting the amount of recovery for total loss to $20.00 per week regardless of the actual wage, the legislature placed a restriction upon high salaried employees. The majority recognizes that restriction in a case of total loss, but reverses the order in case of partial loss and enlarges the benefits of high salaried employees over those of the low salaried class. Under the holding of the majority, had the employee in this case been in the low wage bracket he would have been limited to 35 per cent. of the amount of compensation which would have been due him for the total loss of his leg, but since he falls within the higher wage brackets, he is permitted to recover 100 per cent. of the amount which would have been due him had his leg been totally lost. If his leg had been a total loss his compensation would have been the same as that of an employee suffering the same loss whose weekly wage was $33 1/3. In each case the basis of compensation would have been $20.00 per week. For the purpose of this law no weekly wage exceeds $33 1/3, since 60 per cent. thereof is $20.00. For total loss an employee receiving $95.24 per week is placed in exactly the same category as one receiving $33 1/3 per week. If the two receive the same compensation for the total loss of the use of a leg, it must follow that they should receive the same for a loss of 35 per cent. of its use. The majority would employ a ceiling of $33 1/3 for computing compensation for total loss. That is correct because it is in harmony with the compensation law; yet for computing compensation for partial loss the majority would increase the ceiling from $33 1/3 to $95.24, the wages actually received by the employee. Such construction offends against both the letter and spirit of the law as well as against the prior decisions of this court.

I respectfully enter my dissent from the conclusions of the majority, and the reasons stated insist that the certified question should be answered in the negative. Justice Hickman and Brewster join me in this dissent.

Opinion delivered June 19, 1946.

MR. JUSTICE SLATTON, dissenting.

We are here concerned with the proper method of calculating compensation payments provided for a specific injury which does not extend to other parts of the body. Section 12 of Article 8306 is involved. In order to fully understand the statute we must consider all of its provisions. The first paragraph provides for maximum payments of $20.00 per week and minimum payments of $7.00 per week. Then following are the enumerated schedules which fix maximum weekly duration periods for which the minimum and maximum payments shall be made.

Following the enumerated schedules, the language used by the lawmaking body indicates that the Legislature considered the loss of a specific member of the body to be per se a permanent partial incapacity, regardless of incapacity in fact. The same paragraph recognized that if an employee lost the use of a specific member of the body, compensation should be the same as the loss of that member.

Following this provision, combined injuries to specific members of the body are provided. In order to distinguish and make certain the payments to be made under the enumerated schedules for both single specific injuries and combined specific injuries, provision is made for concurrent injuries, providing payment for the injury which produces the longest period except those fixed for combined injuries stated in the second enumerated schedule.

Following this clause the Legislature reiterated the fact that the permanent loss of use of a specific member is equivalent to and shall draw the same compensation as the loss of that member, but provided the compensation in and by said schedule shall be in lieu of all other compensation.

The above provisions deal with loss of a specific member of the body and the loss of use of a specific member of the body. These payments are provided regardless of whether the loss of a

member or the loss of use of a member affects the earning capacity of the employee in fact.

These provisions only apply to cases of total loss, either temporary or permanent, as well as total loss of use, either temporary or permanent.

Obviously, total loss and total loss of use of a specific member do not cover all of the injuries which may be sustained by working men in virtue of an injury to a specific member of the body. A specific member of the body may be injured, but not to the extent of a total loss or a total loss of use of that member.

Also, other injuries may be sustained by working men to other parts of the body so as not to come within the class of injuries known as general injuries, which are covered by other sections of the compensation statute. Neither would such injuries come within the specific enumerated schedules generally known as specific injuries.

In order to make provisions for the payment of compensation for the class of injuries not provided for in the general provisions of the compensation statutes, Sections 10 and 11 of Article 8306, or in the provisions for specific injuries as enumerated in the schedules, the last paragraph of Section 12 was enacted.

Holmes suffered an injury to his leg at or above the knee and we must apply the specific injury statute to arrive at his proper compensation.

Since Holmes suffered a total loss of use of his leg for a period of eight weeks, the first paragraph of Section 12 must be considered for the maximum and minimum payments. It is necessary to consider the nineteenth provision of the enumerater schedules, for it is the only one applicable to a leg. This is necessary to determine the length or duration of weekly payments. Consideration should be given to the provision which makes the loss of a specific member partial incapacity per se, regardless of incapacity in fact. We must give other provisions of Section 12 due consideration because Holmes' leg was not lost, that is, it was not severed from the body. But the Legislature recognized that the loss of use of a leg should be equivalent to and draw the same compensation as the loss of that member. The clause so providing must be given effect. This is true regardless of whether the loss of use is temporary or permanent.

The injury for its duration is the same in either case. Applying the above provisions to the case at hand, 60% of the average weekly wages, agreed to be $95.24, equals $57.14, but under the first paragraph of Section 12 the maximum is fixed at $20.00 per week. Thus Holmes should receive compensation for a period of eight weeks at the maximum of $20.00 per week.

Holmes further suffered a permanent partial loss of the use of the leg to the extent of 35%. Nowhere in the above noticed provisions has compensation been fixed for a partial loss of use of a specific member. As we have stated, the statute says:

"The permanent loss of use of a specific member shall be equivalent to and draw the same compensation as the loss of that member."

This language should be carefully considered, because it was used in a subsequent paragraph of Section 12 as follows:

"In all cases of permanent partial incapacity it shall be considered that the permanent partial loss of use of the member is equivalent to and shall draw the same compensation as the loss of that member."

The term "in all cases of permanent partial incapacity" as here used means those fixed above in the enumerated schedules and is so stated in the next paragraph following the enumerated injuries. The above two provisions cannot be construed to mean that a 35% partial incapacity to the leg, either permanent or temporary, shall be equivalent to and shall draw the same compensation as the loss of that member, nor should we try to read into those two provisions the authority to reduce the amount of compensation according to the percentage of incapacity by implication. The all-important reason for not doing so is that the last paragraph of Section 12 was so worded and enacted as to meet the very necessities of such a case.

The last paragraph of Section 12 says "in all other cases of partial incapacity," meaning those not covered by the preceding enumerated schedules, namely, those fixing maximum and minimum payments for specifically enumerated injuries. Those provisions are applicable, as we have stated, for a total loss and total loss of use of specific members, either temporary or permanent.

It includes another class of specific injuries other than those enumerated in the schedules, and has been described by the Legislature in these words: "including any disfigurement which will

impair the future usefulness or occupational opportunities of the injured employee."

Since other provisions of the compensation act, such as Sections 10 and 11 of Article 8306, provide compensation as for general injury, and the previous paragraphs of Section 12 provide compensation as for specific injuries, the other class included by the last paragraph of Section 12 is limited in number, but nevertheless equally as important.

The last paragraph of Section 12 is the only statutory authority for reducing the payments of compensation for partial incapacity. The following phrase "compensation shall be determined according to the percentage of incapacity," which is contained in the last paragraph of Section 12, is a legislative command to reduce the compensation according to the percentage of incapacity, and is only found in the last paragraph of Section 12 of the act. In other words, the Legislature intended that the working man should be paid in accordance with the severity of the injuries suffered.

The last paragraph further provides:

"The compensation paid therefor shall be 60% of the average weekly wages of the employee, but not to exceed $20.00 per week multiplied by the percentage of incapacity caused by the injury for such period, not exceeding 300 weeks, as the board may determine."

It is admitted that Holmes sustained a permanent partial loss of the use of the leg to the extent of 35%. It will be noted that the last paragraph of Section 12 has the phrase "not exceeding 300 weeks," which is a maximum duration for weekly payments of compensation. This provision is not in conflict with the duration periods of weekly payments which have been fixed in the enumerated schedules. It would be unreasonable to attribute to the Legislature the intention of allowing 200 weeks duration for the loss or loss of use of a leg and to allow another workman who suffered a less serious injury to the leg a longer duration period for weekly payments. So where the partial incapacity is in virtue of a specific injury enumerated in the schedule and the period of weekly payments has been there fixed, the weekly payment period should not be extended beyond those provided in the schedule,—in the present case, 200 weeks. In any case of a specific injury as enumerated in the single schedule, the duration period of weekly payments

does not exceed three hundred weeks. This is but the application of an important rule to be observed in statutory construction. It would not be fair or reasonable to allow a greater number of weekly payments to be made in case of an injury to the leg of 35% than in a case of total loss or total loss of use of the leg.

Holmes' duration of weekly payments should be limited to 200 weeks as provided in the nineteenth paragraph of Section 12. He is entitled to eight weeks as for total loss of use of the leg, leaving a period of 192 weeks. Applying the language contained in the last paragraph of Section 12, which to my mind is not ambiguous, Holmes' compensation for 192 weeks should be calculated as follows: 60% of his average weekly wages equals, as we have above stated, $57.14. The last paragraph of Section 12 says "but not to exceed $20.00 per week." Then the law says "multiplied by the percentage of incapacity." $20.00 per week multiplied by 35% equals $7.00 per week for 192 weeks. Thus Holmes is entitled to eight weeks at $20.00 per week, equaling $160.00, and 192 weeks at $7.00 per week, equaling $1,344.00, an aggregate judgment of $1,504.00, less the two payments of $20.00 per week which he has received.

There are cogent reasons why all paragraphs of Section 12 of Article 8306 must be construed together so as to harmonize them. Probably the most important rule of statutory construction is that an act should be given a fair, rational, reasonable and sensible construction considering its language and subject matter, and with a view to accomplish the legislative intent and purpose. Empire Gas & Fuel Co. v. State, 121 Texas 138, 47 S. W. (2d) 265; Clark et al v. W. L. Pearson & Co., 121 Texas 34, 39 S. W. (2d) 27; Magnolia Petroleum Co. v. Walker, 125 Texas 430, 83 S. W. (2d) 920.

The same thoughts are expressed otherwise in opinions of this court: statutory construction should comport with common sense, McLelland v. Shaw, 15 Texas 319; and justice, State v. Duke, 104 Texas 355, 137 S. W. 654, 138 S. W. 385. Irrational conclusions or deductions should be avoided. Winder v. King, 1 S. W. (2d) 587. Keeping in mind the foregoing rule as has been expressed in the opinions of this court, is it fair to allow Holmes the same compensation for a permanent partial loss of the use of a leg to the extent of 35% (which is a third less serious than total loss of use) as he has been allowed for a total loss of use for the period of eight weeks? Is such a construction of the

statute rational, reasonable or sensible? Does such construction comport with common sense or justice?

In order to readily understand how unfair the majority view really is, we must bear in mind that the average weekly wages of the employee must be in excess of $33.33 before the method of calculation becomes important with respect to the maximum weekly compensation payments. On the other hand, we must keep in mind the importance of the last paragraph of Section 12 with respect to the minimum weekly payments as distinguished from the minimum fixed in the first paragraph of Section 12. The minimum contained in the first paragraph of section 12 was not intended to apply to a case of partial loss of use of a specific member, for the reason that an employee who suffers a 10% partial loss of use of his leg, with a wage rate of $20.00 per week, would draw $7.00 per week for a period of 200 weeks, and that would be the same compensation of an employee with the same wage rate who had suffered as much as 35% partial loss of use of his leg.

Another significant sentence contained in the last paragraph should be considered:

"Whenever the weekly payments under this paragraph would be less than $3.00 per week, the period may be shortened and the payments correspondingly increased by the board."

This sentence shows that in all other cases of partial incapacity the minimum of $7.00 per week which is fixed in the first paragraph of Section 12 is not applicable thereto. The phraseology of the last paragraph of Section 12 shows that the Legislature was intending to make compensation payments in comparison with the seriousness of the injury suffered by the working man. The query arises, to what does the phrase "not exceeding 300 weeks as the board may determine" have application? In my opinion the provision has application to any case of partial incapacity and includes the class designated by the statute, such as disfigurement which will impair the future usefulness or occupational opportunities of the injured employee. To suppose a case: Suppose a salesman in a ladies' ready-to-wear shop should lost his nose. The injury does not extend to other portions of his body so as to become a general injury. This would be a disfigurement and would probably impair the future usefulness or the occupational opportunities of the employee. No provision has been made for such an injury in the enumerated schedule appearing in Section 12. In such a case

the Industrial Accident Board or the court could allow compensation, that is, 60% of the average weekly wage, but not to exceed $20.00 per week, multiplied by the percentage of incapacity (found by the board or by the jury) for a period not exceeding 300 weeks. This construction of the statute will not do violence to any portion thereof, and will do justice toward working men.

The last paragraph of Section 12 was first construed by the Beaumont Court of Civil Appeals in Western Indemnity Co. v. Milam, 230 S. W. 825, in which this court refused a writ of error. The action of this court was on January 25, 1922. 112 Texas 639. The court of civil appeals say:

"Under this paragraph, (having reference to the paragraph in review) appellee contends, by cross-assignment, that the amount of compensation for partial disability should be determined by multiplying 60 per cent. of the average weekly wages by the percentage of disability, limiting the compensation to $15 per week, and as sustaining him, cites the fact that this is the construction placed on this paragraph by the Industrial Accident Board. He concedes that this construction requires that the paragraph be read as if the clause 'but not to exceed $15 per week' followed the words 'multiplied by the percentage of incapacity caused by the injury,' but insists that it effectuates the true purpose of the Legislature, which was to fix the maximum compensation in all cases at $15 per week. But—

" 'The statute itself furnished the best means of its own exposition; and if the intent of the act can be clearly ascertained from a reading of its provisions, and all its parts may be brought into harmony therewith, that intent will prevail, without resort to other aids for construction.' Lewis' Sutherland, Statutory Construction (2d Ed.) sec. 348.

"A literal construction of this paragraph does not bring it in conflict with any other part of the act. It follows, then, that we should give it that meaning its reading imports, which is to limit 60 per cent. of the average weekly wages to $15 per week and fix the compensation by multiplying this 60 per cent. by the percentage of disability."

Shortly thereafter the Legislature amended the compensation act as it was originally passed in the Act of 1917. With respect to Section 12 of Article 8306, it was re-enacted in 1923 with the only change of raising the minimum of $5.00 per week to $7.00, and raising the maximum from $15.00 per week to $20.00 per

week. See Chapter 177, Acts 38th Legislature, Regular Session 1923, pp. 384, 390. The act was approved April 3, 1923. In the case of Texas Fidelity & Bonding Co. v. City of Austin, 112 Texas 229, 236, 246 S. W. 1026-1029, it is said:

"It is an elementary rule of construction that where, after a statute has been construed by the highest court of the state, the Legislature re-enacts the statute, whether by the adoption of Revised Statutes or by amendment, the act of the Legislature carries with it the construction previously placed upon the law by the court."

Thus it is seen that when the Legislature amended the act without any change it "carried with it the construction previously placed upon the law by the court." This is a clear legislative approval of the construction which the court placed upon the statute.

The case of Maryland Casualty Co. v. Ferguson, 252 S. W. 854, was decided by the El Paso Court of Civil Appeals contrary to the Milam case. In the Ferguson case there are three opinions, neither of which entirely agrees with the other. Application for the writ of error in that case alleged as grounds for jurisdiction in this court a conflict between the Ferguson case and the Milam case. Unfortunately the Supreme Court refused a writ of error. Evidently the Supreme Court did not intend to settle the conflict of decisions between the courts of civil appeals by refusal of a writ of error in the Ferguson case, because at that time the Supreme Court did not have jurisdiction to settle conflicts of opinions of the courts of civil appeals in this manner. Had the Supreme Court desired to do so, it would at that time have been necessary to grant the writ and write an opinion in the case. The authority to settle conflicts of opinions between the courts of civil appeals was subsequently given to the Supreme Court by the amendment of our jurisdictional statute, Article 1728, in the year 1927. See Acts 40th Legislature, p. 214, wherein this significant amendment was placed in the statute:

"Provided further that in cases of conflict named in Subdivision 2 above, (those of which one of the courts of civil appeals holds differently from a prior decision of its own, or of another court of civil appeals or of the Supreme Court upon any such question of law) the Supreme Court may, in its discretion, refuse the writ of error where the court is in agreement with the decision of the Court of Civil Appeals in the case in which the application is filed; * * *."

We should not attribute to the Supreme Court the intention of settling a conflict of decisions of the courts of civil appeals by a refusal of the writ of error, when at the very time the court had no such authority to do so. Obviously, the judgment in the Ferguson case is wrong, because the statute, in my opinion, is not susceptible of the construction placed thereon. I shall content myself with the belief that the Supreme Court, on account of its heavy docket, failed to fully comprehend the holding in the three divergent opinions of the El Paso Court of Civil Appeals in the Ferguson case.

It was contended in the Milam case that the court should give the construction insisted for on this appeal because the Industrial Accident Board had placed that construction on the statute. As I understand the rule, departmental construction is only given weight where there is ambiguity in the statute. Obviously we cannot construe a statute different from its wording solely because of an erroneous departmental construction thereof. This principle is well illustrated in the case of Ramsey et al v. Tod, Secretary of State, 95 Texas 614, 626, 69 S. W. 133, 136. It says:

"It is alleged in the petition, in effect, and it is, of course, admitted by the demurrer, that since the passage of the law successive secretaries of state have construed it in accordance with the construction of the relators. But we do not think that the construction of the statute is of such doubtful character that the action of the secretaries of state should be given controlling effect. Nor do we think the fact that the law has been amended by the legislature since such construction by the executive officers of the state, without change as to the matter under consideration, affects the question."

This well-settled rule was restated in the case of McCallum, Secretary of State, v. Associated Retail Credit Men of Austin, 41 S. W. (2d) 45, local citation 47:

"The rule that a departmental ruling adhered to through years of administering of a statute will be given weight, only applies to statutes of doubtful construction. Such a rule has no application to a statute, such as this, that is not of doubtful construction or application. (Citing the Ramsey case, supra)."

In principle, I think the cases of Petroleum Casualty Co. v. Seale, 13 S. W. (2d) 364, and Lumbermen's Reciprocal Ass'n. v. Pollard (Com. App.) 10 S. W. (2d) 982, are controlling in the instant case.

In the Seale case it is said:

"The manifest injustice of the rule contended for by defendant in error is made apparent by the recovery permitted in this case. If one of his colaborers had been injured at the same time defendant in error received his injury, which had resulted in the amputation of his foot, or in the complete loss of the use thereof, the recovery would have been confined, under the plain provisions of Section 12 of the act, to 60 per cent. of his average weekly wages for a period of 125 weeks, which defendant in error, who suffered a lesser injury, was allowed the same amount of compensation for a period of 300 weeks. In other words, he has been allowed more than twice as much compensation for a permanent partial incapacity to his foot as his colaborer could have been allowed for the complete loss of the use of his foot. We do not think, when the act is considered as a whole, that we are justified in imputing to the Legislature an intention to work such an injustice and inequality upon those entitled to receive benefits under the act."

By the same principle I do not think the Legislature ever intended that an employee such as Holmes should receive as much compensation for a 35% permanent partial incapacity to the leg as his fellow employee, who suffered the entire loss of a leg, and this is particularly true where his fellow employee had the same wage rate. The effect of the majority holding is to allow this injustice. The injustice of the rule is emphasized by a consideration of the fact that this cannot possibly occur under any other provision of the workmen's compensation laws as they have been construed by the courts.

In 1932 the Fidelity Casualty Company v. Munday, 44 S. W. 926, case was decided, wherein the correct principle was applied. We quote briefly from that case:

"With regard to a permanent partial loss of the use of a hand, it has been repeatedly held, in effect, that such a loss comes within the purview of the above provisions and that payment of compensation each week, as there provided, is required to be made in the proportion that the use of the hand is permanently lost. (citing cases) That holding was expressly approved by the Supreme Court in the Seale case and impliedly approved in the other two. In conference with the Supreme Court, we have been authorized to declare all holdings to the contrary, in other cases, overruled."

The judgment in the Munday case provided for a maximum

recovery of $20.00 per week compensation for the period of 15 weeks and thereafter allowed $15.00 per week for the remaining 135 weeks. This because of the jury findings of total loss of use for a period of 15 weeks and the percentage of the permanent partial incapacity of defendant's hand was found to be 75%. It seems to be unfortunate that the cases intended to be overruled were not cited, but we have gone to the brief of the compensation claimant in the Munday case and find that he was relying upon, among others, Maryland Casualty Co. v. Ferguson, 252 S. W. 854.

It is important also to observe that since the decision of the Milam case and the other cases heretofore cited, that many terms of the Legislature have been in session and no action has been taken to overrule these decisions.

The next time a case was presented to this court was in 1945, the case styled Industrial Accident Board v. Glenn. It is to be observed that the Austin Court of Civil Appeals decided the Glenn case upon the same principle as was announced in the Munday case, and the opinion was handed down on November 15, 1944, prior to the convening of the last session of the Legislature. Also the case of Zurich General Accident & Liability Ins. Co. v. Thomas, 187 S. W. (2d) 689, was handed down January 25, 1945. These opinions followed the holding of the Beaumont Court in the Milam case.

The following bill was introduced in the Senate at the last session, being Senate Bill No. 259, the enacting clause of which recites:

"AN ACT amending Section 12 of Article 8306, Revised Civil Statutes of Texas, 1925, so as to provide that in all cases of permanent partial disability as provide the compensation shall be calculated or figured at sixty per cent of the average weekly wage multiplied by the per cent of disability to the particular member or members specifically enumerated above; but in no even shall such compensation rate exceed $20.00 per week; and provided in all other cases of partial incapacity, including any disfigurement, the compensation paid therefor shall be sixty per cent of the average weekly wages multiplied by the per cent of incapacity caused by the injury; and declaring an emergency."

The failure of the Legislature to adopt this proposal is all persuasive evidence that the Legislature approved the construction which had theretofore been placed upon the statute in review by the cases cited above. Moreover, the Supreme Court

granted writ of error in the Glenn case. The court as then constituted consisted of three justices and six judges of the Commission of Appeals. The Glenn case was submitted to the entire nine judges, both on oral argument and on the briefs of the parties, together with many amicus curiae briefs. The case was assigned by the court to this writer. On April 18, after full discussion before all nine judges, the opinion of the writer was handed down on said date construing the statute as it was construed in the Milam case, without a dissent of either member of the court. The Legislature adjourned without passing the above senate bill, evidently with full knowledge of the action of the Supreme Court in the Glenn case. I am not apprised of any new argument being suggested as would render the statute ambiguous or would require a different construction thereof.

In my opinion the confusion that has arisen is the failure to distinguish between Sections 10 and 11 of Article 8306 and Section 12. For instance, in the case before us, if the literal rule governing Section 11 is applied to a specific injury case such as this, Holmes would not be entitled to compensation, for the the reason that he is drawing the same wages now as he was before receiving his specific injury. The confusion is apparent from the quoted portion of Justice Simpson's dissenting opinion in the Glenn case.

Little need be said concerning the divergent views expressed in the dissenting opinion of Justice Folley, in which Justices Hicks and Brewster concur, because we reach the same result in the present case. However, I cannot agree with them, for the reason that, in my opinion, the cases upon which they rely do not hold the last paragraph of Section 12 is not applicable as to the proper method of calculating compensation for a permanent partial incapacity to a specific member of the body. The cases upon which they rely are: Lumbermen's Reciprocal Ass'n. v. Pollard, (Com. App.) 10 S. W. (2d) 982; Petroleum Casualty Co. v. Seale, 13 S. W. (2d) 364; Texas Employers' Ins. Ass'n. v. Maledon (Com. App.) 27 S. W. (2d) 151; Fidelity Casualty Co. v. Munday, 44 S. W. (2d) 926; Great American Indemnity Co. v. Stutz, 56 S. W. (2d) 200, writ refused. The average weekly wages were not high enough to reach the precise question here presented in the Seale and Pollard cases, but the principle on which the cases were decided is the same as in this case.

The minimum weekly payment was involved in the Maledon case, and judgment was properly rendered by the court for a

weekly compensation rate of $5.54 per week. Thus demonstrating beyond any doubt that the court was considering the last paragraph of Section 12 of Article 8306, which provides for weekly compensation payments according to the percentage of incapacity, without fixing a minimum, as does the first paragraph of Section 12 of Article 8306, which provides a minimum of $7.00 per week.

Nor do I construe the case of Great American Indemnity Co. v. Stultz, 56 S. W. (2d) 200, writ refused, as holding contrary to my views. The case is a good illustration of the application of the rule of liberal construction with regard to the compensation act. The insurance company in that case contended that no provision had been made in the compensation act to compensate for the loss of sight less than total loss. Its argument was based upon the literal reading of the statute "for the total and permanent loss of sight of one eye, 60% of the average weekly wages during 100 weeks." The employee in that case suffered a 25% partial loss of the sight of the eye and was paid in accordance with my views under the last paragraph of Section 12.

The Munday case, as I have heretofore said, is in line with the Milam case, and settled the very question now before us contrary to the majority view. Moreover, the court recognized in the Seale case, which followed the Pollard case, that it was not out of harmony with the Moreno case, 277 S. W. 84, local citation 87. In that case it is said:

"Section 12 speaks of the specific injuries mentioned as cases of 'permanent partial incapacity.' And a reading of the injuries discloses that each of them involves only a partial incapacity. The loss of a limb is a permanent incapacity, but only a partial one. This section of the law allows an employee one-half as much for the loss of an arm as he could possibly recover for total inability to work for any other reason. The law says that the permanent loss of the use of a member shall be the same as if it was cut off. A man whose arm is permanently paralyzed would get the same compensation under section 12 as would one whose arm was cut off with a knife. But a careful reading of section 12 discloses that these specific recoveries are liimted either to the loss of a member or the permanent loss of its entire usefulness. *There is nothing in section 12, prior to its last paragraph, allowing recovery for the temporary or permanent partial loss of the usefulness of an arm.*" (Emphasis ours).

It is true that the maximum of $20.00 per week provided

under the various sections of the compensation statute seems relatively small, and if we assume that it was just when made in 1923, conditions now are such that it is wholly inadequate. This is a legislative problem. This does not authorize or justify a court to do an injustice and favor higher paid working men. Because the maximum provided under the workmen's compensation law is inadequate is no justification for allowing Holmes, who suffered a 35% incapacity to his leg, to receive $20.00 per week, when under the same statute his fellow employee, if he had suffered a total loss of a leg, would be compensated in the same amount. This was never intended by the Legislature, and should never be allowed in any case.

The result of the decision of the majority is to favor working men whose average weekly wages are in the higher brackets and to discriminate against those who are not so fortunate. The whole theory of the workmen's compensation law is to favor those with the smaller incomes. This is illustrated by the minimum fixed by the first paragraph of Section 12, which provides a minimum weekly payment of $7.00 per week regardless of the average weekly wage of an employee who suffers a total loss or a total loss of use of a specific member of the body.

In my opinion, this Court should not, under the guise of liberal construction, interpret the act so as to discriminate against employees of the smaller wage group in favor of those of the higher wage bracket.

Entertaining as I do the firm conviction that the majority opinion is wrong, I most respectfully enter my dissent.

Opinion delivered June 19, 1946.