

# THE ATTORNEY GENERAL

# OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN, TEXAS

February 21, 1950

Hon. Gibb Gilchrist
Chancellor
Texas A & M College System
College Station, Texas

Dear Sir:

Opinion No. V-1012.

Re: The applicability of
State inspection fees
to a fertilizer sold
by the City of Houston.

Your request for an opinion reads as follows:

"The director of Public Works of the City of Houston has raised the question with the State Chemist as to whether the City of Houston is subject to the inspection fees required by Article 97, Revised Civil Statutes, 1925, and Article 1712 of Revised Penal Code, 1925, on the tonnage of fertilizer which they sell.

"The City of Houston makes and markets a processed activated sewage sludge under the trade name of Hou-Actinite. This product is registered with the State Chemist as having a guaranteed analysis of 5% nitrogen, 3% total phosphoric acid, and 0% potash. It is a commercial fertilizer under the definition given in Paragraph 1, Article 1716, Revised Penal Code, 1925.

"This product has been registered for a number of years with the State Chemist in compliance with Article 95, Revised Civil Statutes, and Article 1710, Revised Penal Code.

"Prior to the amendment of the law by the 51st Legislature, the City of Houston has purchased tax tags in compliance with these laws. The City of Houston has filed a report of the sales of this product for the quarter September 1 through November 30, 1949.

"Question: Is the City of Houston subject to the inspection fees on the tonnage of fertilizer sold by that city, under Article

97, Revised Civil Statutes, 1925, and Article
1712, Revised Penal Code, 1925, as amended by
Chapter 170, House Bill 574, 51st Legislature,
Acts 1949?"

Articles 94 through 108 of Vernon's Civil Stat-
utes, and Articles 1709 through 1720 of Vernon's Penal
Code, regulate the sale of commercial fertilizer within
the State of Texas. To defray the expenses of inspec-
tion and enforcement of these regulatory laws, an inspec-
tion fee of twenty-five cents per ton is provided for
commercial fertilizer "sold, exposed or offered for sale
in this State" by "all firms, corporations or persons"
engaged in the manufacture or sale of commercial fertil-
izers. Art. 97, V.C.S., and Art. 1712, V.P.C.

These statutes were passed to prevent fraud
being practiced in the sale of such products. Ex Parte
White, 82 Tex.Crim.85, 198 S.W. 583 (1916); A.G.Letter
Opinions, Vol.363, p.895. The inspection fee or tax
authorized by this law is levied and collected for the
purpose of defraying the expenses of the State Chemist
and those working under him in inspecting, analyzing
and registering commercial fertilizers. See A.G.Opin-
ions and Reports, Vol. 1914-1916, p.722.

An examination of Section 1, Article VIII, and
Section 9, Article XI of the Constitution of Texas re-
veals that these sections operate to exempt municipal
corporations from only three classes of taxes. They are
ad valorem, occupation and income taxes. State v. City
of El Paso, 135 Tex. 359, 143 S.W.2d 366 (1940). It is
plain that the inspection fee required to be collected
by Article 97 is not an ad valorem tax or an income tax.
It is equally clear, we think, under the decisions of
the Supreme Court in City of Fort Worth v. Gulf Ref.Co.,
125 Tex. 512, 83 S.W.2d 610 (1935) and State v. City of
El Paso, supra, that the inspection fee here under con-
sideration cannot be classed as an occupation tax. Such
tax or fee is a license fee. A.G.Opinions and Reports,
Vol. 1914-1916, p.722. This being true, the constitution-
al exemption of municipal corporations from occupation,
income or ad valorem taxes has no application.

Article 97, V.C.S., as amended by Section 1,
House Bill 574, Acts 51st Leg., R.S. 1949, ch.170, p.
342, provides in part:

" To defray the expenses connected with

the inspection and analysis of commercial
fertilizers sold, exposed or offered for
sale in this State and experiments relative
to the agricultural value thereof, all firms,
corporations or persons engaged in the man-
ufacture or sale of commercial fertilizers,
herein termed the guarantors of commercial
fertilizers, shall pay to the State Chemist
at his office in College Station, Texas, an
inspection fee of . . . (25¢) per ton of
. . . (2000) pounds of commercial fertili-
zers which have been registered in compliance
with the requirements of Article 95 of this
Chapter and sold or distributed for sale in
this State. Such inspection fee shall be
paid by the guarantor of such fertilizer, and
no other person shall be required to pay any
additional inspection fee . . ."

Article 1712, V.P.C., as amended by Section 2
of House Bill 574, supra, provides in part:

"All firms, corporations or persons en-
gaged in the manufacture or sale of commer-
cial fertilizers, hereinafter referred to as
the guarantors of commercial fertilizers,
shall pay an inspection fee of . . . (25¢)
per ton of . . . (2000) pounds of all commer-
cial fertilizers which have been registered
in compliance with the requirements of Arti-
cle 1710 of this Chapter and sold or distri-
buted for sale in this State in order to
entitle the same to inspection and delivery
. . ."

It is evident that the legislative intent, as
expressed in the above quoted statutes, is to impose an
inspection fee of twenty-five cents per ton of commer-
cial fertilizer which is sold or distributed for sale
in this State, to be paid by the guarantor of such fer-
tilizer. It is expressly provided that "no other per-
son shall be required to pay any additional inspection
fee."

In Opinion No. O-4617, by a former Attorney
General, it was held that such a fertilizer inspection
tax could not be imposed on the Agricultural Adjustment
Administrator on fertilizer distributed by it in Texas,
for the reason it is an instrumentality of the Federal

Government and as such could not lawfully be burdened with that tax or fee. However, that opinion as well as Opinion No.0-4792, by the same Attorney General, held that a private person, firm or corporation selling commercial fertilizer to the Agricultural Adjustment Administration in Texas is subject to the Texas fertilizer laws. It was pointed out that the fact the sale is made to a Federal instrumentality does not clothe the vendor with the immunity possessed by the vendee. From the reasoning expressed in Opinion No.0-4792, it follows that a person, firm or corporation selling commercial fertilizer to a municipal corporation in Texas is likewise subject to the Texas fertilizer laws. Referring to the above quoted statutes, we find no direct provision exempting persons, firms or corporations who sell commercial fertilizers to Texas municipal corporations, nor will such statutes permit of any such construction.

The question of whether a municipal corporation was subject to the Texas fertilizer laws was not presented or considered in the above opinions (0-4617 and 0-4792), and they should not be construed as having passed on such question. The word "private" is inaptly used in those opinions in referring to the statutory language of "person, firms or corporations."

We are aware that it is a general rule of statutory construction that a tax imposed by law upon corporations will not be held to be imposed upon municipal corporations unless the intent to do so clearly appears or is free from doubt. State v. City of El Paso, supra. Considering the Texas Fertilizer Laws as a whole, and the protective purpose for which they were enacted, it is clear, in our opinion, that it was the intention of the Legislature that such laws were intended to cover all persons, firms or corporations engaging in the sale, or offering for sale in Texas of commercial fertilizers, regardless of whether they are private or municipal corporations. The emphasis in the statute is on the sale of commercial fertilizers rather than on the status of the vendors thereof.

But if the statutes be ambiguous and susceptible of more than one construction, there are certain other well-settled rules which govern their construction. First, the practical interpretation of the act by the Agency charged with the duty of administering it is entitled to the highest respect from the courts. This is especially true when that interpretation has been long continued and uniform. Texas Employers' Ins. Ass'n v.

Holmes, 145 Tex. 158, 196 S.W.2d 390 (1946). Second, as stated in 39 Texas Jurisprudence 266, Statutes, Section 141:

> "Where a statute which has been construed, either by a court of last resort or by executive officers, is re-enacted without any substantial change of verbiage, it will continue to receive the same construction."

Under both the original and amended fertilizer laws, the State Chemist is charged with the duty of their administration. Under the facts submitted, he has for a number of years registered the commercial fertilizer product of the municipal corporation in question, and the corporation, in compliance with those laws, has purchased the tax tags required by it prior to the amendmen of Articles 97, V.C.S. and 1712, V.P.C., by the 51st Legislature.

Article 97, V.C.S. and Article 1712, V.P.C., were amended by H.B.574, Acts 51st Leg., R.S. 1949, ch. 170, p.342. The Legislature is presumed to have known the construction given this statute by the State Chemist. The construction given an original act should be regarded as having been brought forward in amendments to the act, if the amendments have not obviously changed such construction. Likewise the construction to be given an re-enacted statute should be the same as that given to the original act unless impelling reasons dictate otherwise. Texas Employers Ins.Ass'n v. Holmes, supra.

In the question under consideration it is clear that Articles 97 and 1712, as amended in 1949, present no reason calling for a construction of the inspection fee provisions of the fertilizer laws different from that heretofore given them by the State Chemist. The 1949 amendments are primarily directed at the changing of the tag affixing requirements of the original act. Sec.4, H.B. 574.

## SUMMARY

A municipal corporation engaged in the making and selling of commercial fertilizer in Texas is subject to the payment of the inspection fees required in Article 97, V.C.S.

and Article 1712, V.P.C., as amended by H.B.574, Acts 51st Leg., R.S. 1949, ch. 170, p.342. State v. City of El Paso, 135 Tex. 359, 143 S.W.2d 366; Texas Employers' Ins. Ass'n v. Holmes, 145 Tex. 158, 196 S.W.2d 390; City of Fort Worth v. Gulf Ref.Co., 125 Tex. 512, 83 S.W.2d 610; A.G. Opinions and Reports, Vol.1914-1916, p.722.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

J. C. Davis, Jr.
County Affairs Division

By Chester E. Ollison

Charles D. Mathews
Executive Assistant

Chester E. Ollison
Assistant

CEO:bh:mw