**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

George **WHITAKER**, Appellee.

No. 5027.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 30, 1954.

Rehearing Denied Jan. 20, 1955.

Collins, Garrison, Renfrow & Zeleskey, Lufkin, Thompson & Stripling, Nacogdoches, for appellant.

Fulmer, Fairchild & Barnett, Nacogdoches, for appellee.

WALKER, Justice.

This is a workman's compensation case. The workman, George Whitaker, was injured on January 23, 1952, by the fall of a heavy mass of fertilizer, which broke and collapsed upon him. According to testimony given in his behalf, he was at this time injured in various parts of his body, one of which was his right leg.

The jury found (Issue 1) that the workman "has suffered the total loss of the use of his right leg as a natural result of the injury suffered by him on—January 23, 1952"; that (Issue 2) "such total loss of use of (the workman's) right leg began" on January 23, 1952; and (Issue 3) that this total loss of use was permanent.

The jury found further (Issue 8) that "the injury to (the workman's) right leg extends to and affects his body besides his right leg, thereby causing incapacity" and (Issue 9) that "the injury to (the workman's) right leg affects his general health,

thereby causing incapacity." It is to be noted that these findings refer to the present, that is, the time when the answers were made.

The jury found further that the workman had sustained a temporary total incapacity (47 weeks) which was followed immediately by a permanent partial incapacity of 45%. Concerning total incapacity they found (Issue 10) that the workman "sustained total incapacity as a natural result of the injury sustained by him on—January 23, 1952"; that (Issue 11) "such total incapacity" began on January 23, 1952; and (Issue 12) that "such total incapacity" continued until December 20, 1952. Concerning partial incapacity the jury found (Issue 13) that the workman had sustained "partial incapacity as a natural result of the injury suffered by him on—January 23, 1952"; that (Issue 14) "such partial incapacity" began on December 21, 1952; that (Issue 15) "such partial incapacity" was permanent; and that (Issue 16) the percentage of "such partial incapacity" was 45%.

On this verdict the trial court rendered judgment awarding the workman two items of compensation benefits, less payments already made to him. The first item was the benefits provided by Sec. 12 of Art. 8306, V.A.T.S., for the total loss of the use of a leg. These benefits run for 200 weeks from the date of the injury, the statutory period for which such benefits are provided. The second item is benefits provided by Sec. 11 of Art. 8306, V.A.T.S., for partial disability. These benefits begin at the end of those for the loss of the use of the leg and run for 147 weeks longer; this is the remainder of the statutory period during which payments of benefits for this incapacity might be made after the 200 weeks covered by the first item had been deducted.

The trial court, then, treated the specific incapacity of the right leg and the general incapacities as giving the workman inconsistent rights during, but only during, the period (200 weeks) when compensation benefits authorized to be paid for each incapacity happened to be concurrent, and has given no significance to the fact that the specific injury was making some contribution to the general incapacity.

From this judgment insurer has appealed, assigning error only to the calculation of the workman's compensation benefits. It is the particular combination of benefits for specific and general incapacities to which insurer objects, and insurer argues that the workman's rights to these benefits were wholly and not partially inconsistent and in the alternative.

The first question raised by insurer's argument is one as to the meaning of the verdict. Under Issues 8 and 9 the jury have found that at the time they answered these issues, the injury to the workman's right leg extended to and affected other parts of his body and affected his general health and was thereby causing him incapacity. How long would the injury to the leg continue to have these effects? The answer to this question depends upon the construction of the jury's answers to Issues 10 to 16, inclusive, which refer to the general incapacities. Under Issue 10 the jury found that the workman's total incapacity was caused by *"the injury* sustained by him on—January 23, 1952." The word "injury" is defined in the charge as "damage or harm to the physical structure of the body—such diseases or infections as naturally result therefrom—the lighting up or acceleration or aggravation of any disease", etc., and with this definition before us we construe the words "the injury sustained by him on—January 23, 1952" as a general expression which includes *all* of the various harms and damages, that done to the right leg as well as others, which the jury thought that the workman had sustained on the date mentioned, January 23, 1952. That is, the answer to Issue 10, as we construe it, declares the injury to the right leg to be one of the causes of the workman's total incapacity, and as a consequence, we construe the answers to Issues 11 and 12, which refer to the total incapacity mentioned in Issue 10, as implying that this injury to the leg continued to be a contributing cause to the total incapacity while that incapacity existed. The jury evidently thought that this injury to the

right leg was not the *sole* cause of the total incapacity because they attributed both the total loss of use of the leg and the total incapacity to the same event and fixed each incapacity as beginning on the same date, yet they found that the incapacity from the injury to the leg was permanent while the total incapacity was only temporary (47 weeks). However, this fact is not inconsistent with the construction that the total loss of the use of the leg was a cause of the total incapacity.

The issues referring to partial incapacity are to be given the same sort of construction. Under Issue 13, the jury found that the workman had sustained partial incapacity as a result of "the injury suffered by him on—January 23, 1952". The "injury" here mentioned is, of course, that inquired about in Issue 10, and the language quoted from Issue 13 would ordinarily receive the same construction as given that used in Issue 10, namely, as referring to all of the various harms and damages which the jury thought the workman had sustained on the occasion mentioned. However, the incapacity found under Issue 13 is partial instead of total as found under Issue 10, and this, with the answer to Issue 12 showing that total incapacity had ended, naturally qualified the meaning of the words "the injury suffered by him on—January 23, 1952" by implying that the partial incapacity is the result of such of the harms and damages to the workman on the occasion mentioned as the jury thought to be still effective; and this construction necessarily implies that the injury to the right leg was a cause of the partial incapacity. As a consequence, we construe the findings under Issues 14 and 15, which refer to the partial incapacity mentioned in Issue 13, as showing that this injury to the leg would be a cause of the partial incapacity while that incapacity existed, that is, permanently.

■ We have, then, concluded that the verdict shows how long the injury to the right leg will contribute to the partial incapacity, and the verdict also shows *how* this injury will operate as such a cause. For the jury were instructed in the charge that "neither *total incapacity* nor *partial incapacity* as those terms are used in this charge, can exist where an injury and its disabling effects are confined to the legs, feet, arms, hands or eyes, or any one or more of said parts," and the jury found total and partial incapacities and also found that the injury to the leg was causing incapacity by general effects upon the workman's body and health. The jury must have thought that the injury to the leg would be a cause of the partial incapacity in this way.

The next question concerns the effect of this construction of this verdict. It is a result of this construction that the trial court's judgment awards the workman compensation benefits for incapacity caused by the injury to the leg after the complete period of benefits provided by Sec. 12, Art. 8306, for total loss of the use of the leg had been paid, and such a judgment violates the provision of Sec. 12 now to be mentioned. The next to last paragraph of Sec. 12 provides that the permanent loss of use of a member shall draw the same compensation as the loss of that member but that this "shall be *in lieu* of all other compensation in such cases." The language quoted prohibits an award of benefits for loss of use of a leg in addition to the benefits which this paragraph authorizes, yet the trial court's judgment makes such an additional award—on our construction of the verdict. The judgment under review also enforces inconsistent rights. See: Great American Indemnity Co. v. Sams, Tex.Civ.App., 170 S.W.2d 564, affirmed at 142 Tex. 121, 176 S.W.2d 312, and Hargrove v. Trinity Universal Ins. Co., Tex., 256 S.W.2d 73.

In support of the judgment the workman cites Millers' Indemnity Underwriters v. Cahal, Tex.Civ.App., 257 S.W. 957; Texas Indemnity Ins. Co. v. Fry, Tex.Civ.App., 41 S.W.2d 679, and Denbow v. Standard Accident Ins. Co., 145 Tex. 267, 199 S.W. 2d 651, but none of these decisions is in point. Regardless of other circumstances, the additional compensation benefits adjudged in these cases did not include the double award made in this case, and it is to be noted that the additional benefits adjudged in those cases is not of the same

kind as those adjudged here. Texas Employers' Ins. Ass'n v. Moreno, Tex.Com. App., 277 S.W. 84 indicates the significance which the character of additional benefits may have.

Because of these conclusions the judgment under review must be reversed and the next matter to be considered is the judgment to be rendered by this court. However, the parties are not at issue on this matter (if the judgment under review does not stand) and the workman will be adjudged the benefits payable for the specific incapacity since these happen to be slightly larger than those payable for the general incapacities.

The judgment of the trial court is reversed insofar as it awards the workman compensation benefits in addition to those awarded for the 200 weeks following the injury. Judgment is here rendered denying the workman recovery of those additional benefits and awarding him the balance of the sum adjudged to him in the trial court's judgment. Costs are adjudged against the workman.