ZURICH GENERAL ACCIDENT & LIA-
BILITY INSURANCE COMPANY,
Ltd., Appellant,

v.

A. J. HOLMES, Appellee.

No. 6032.

Court of Civil Appeals of Texas.

Beaumont.

March 22, 1956.

Rehearing Denied May 23, 1956.

Vinson, Elkins, Weems & Searls, Houston, for appellant.

Wilder & Berlin, Beaumont, for appellee.

R. L. MURRAY, Chief Justice.

This is an appeal from a judgment in the District Court of Jefferson County in a workmen's compensation case. Pure Oil Company was the employer. The appellant, Zurich General Accident & Liability Insurance Company, Ltd., was the insurance carrier and appellee Holmes was the injured

employee. The judgment was rendered on the verdict of the jury as to the nature and extent of the injury and on the trial court's finding that the appellee's wage rate was $90 per week.

The jury by its verdict found, among other things, that the appellee had suffered a 17½ per cent partial permanent loss of the use of his right leg in an accidental injury in the course of his employment with Pure Oil Company; that the partial loss of use of the leg began on July 6, 1952, the date of the injury. In the judgment the trial court found that from the undisputed testimony $90 per week was the wage rate of the appellee. The judgment was for payment of 200 weeks compensation at the rate of 17½ per cent of 60 per cent of $90 or $9.45 per week for 200 weeks. The judgment also found that the appellant had paid the appellee compensation at the rate of $25 per week for five weeks of total disability.

At the conclusion of the testimony appellant filed a motion for instructed verdict on the ground that the appellee had failed to introduce any evidence on the question of whether or not any other employee of the same class as appellee had worked substantially the whole year immediately preceding July, 1952, and that therefore there was no basis upon which the jury could determine the applicable wage rate of appellee, for the purpose of awarding compensation benefits for any injury he received. This motion was overruled. In the court's charge no issues were submitted to the jury on the question of wage rate.

The appellant brings its appeal under six points of error. Appellant's first point is that the trial court erred in overruling its motion for instructed verdict, because there is no evidence of probative force that eliminates Subsection 2 of Article 8309, Sec. 1, Vernon's Ann.Civ.St., as a method of determining appellee's wage rate. Appellant's second point of error is that the evidence is insufficient to eliminate Subsection 2 of Article 8309, Sec. 1, as a method of determining appellee's wage rate. Appellant's third point is that since the question of appellee's wage rate was a disputed fact issue, the trial court erred in failing to submit to the jury any special issue inquiring into this matter. Its fourth point is that since the question of wage rate was a disputed fact issue, the trial court erred in supplying its own fact finding that appellee's average weekly wage was $90 per week. We will discuss these four points together.

At the time of his accidental injury appellee Holmes was working at the Pure Oil Company refinery near Nederland in Jefferson County. At the time of the trial in September, 1955, he testified that he had been working for the Pure Oil Company for nine years and was still employed there. He was injured when he was working on top of a tank car at a loading rack. He fell from the top of the dome of the tank car to the platform at the loading rack, injuring his right leg and knee. There was no controversy in the trial over the injury. Most of the 169 pages of the statement of facts is concerned with the degree and extent of the disability resulting from the accident. The evidence in regard to wages and wage rate is rather slim. Holmes had been working at his job on the loading rack for about six months before the injury. For several years before that he had worked at another job in the refinery on the docks. His testimony in regard to his wage rate was as follows:

"Q. Mr. Holmes, had you worked for the Pure Oil Co. for more than a year preceding the time of this accident? A. Yes, sir.

"Q. Had you been doing the same type of work approximately for a year preceding the accident? A. A whole year, no, sir.

"Q. How long had you been doing the same type of work? A. I couldn't give you a definite answer: approximately 6 months.

"Q. What was your salary, or your hourly wage rate at that time? A. The best I remember, it was $2.25 an hour.

"Q. Was that the standard rate for people doing that type of work at the Pure Oil? A. Yes, sir.

"Q. Was that the standard rate for people doing that type of work in this vicinity, to the best of your knowledge? A. To the best of my knowledge, yes, sir.

"Q. Was that the standard wage rate for people who had worked in that same type of work for more than 12 months? A. Will you repeat that question again?

"Q. If there were men on the job who had worked on the loading rack for more than a year that made the standard wage rate of $2.25 an hour, too? A. Yes, sir.

"Q. Then that was the standard wage rate for men who had worked for a year or more in this same type of work at the Pure Oil? A. Yes, sir.

"Q. In Jefferson County, Texas? A. Yes, sir. * * *

"Q. You were paid at the same rate as the other men who were working in the same work with you? A. Yes, sir.

"Q. He has given you a figure of $4743.-84. Would you say to the best of your knowledge that was your income for the year immediately preceding the accident? A. To the best of my knowledge, yes, sir.

"Q. And that was for a full year's work? A. Yes, sir."

### Cross-Examination

By Mr. Crane:

"Q. Mr. Berlin has asked you about your wages for the year immediately preceding the accident of July 14, 1952; is that correct? A. Yes, sir.

"Q. During that year you were working 5 days a week, were you not? A. Yes, sir.

"Q. Do you ordinarily work 50 weeks out of the year? A. Well, I worked the whole year, and I think a year has 52 weeks in it.

"Q. 52 weeks is a year, and you get two weeks' vacation? A. I got paid for my vacation.

"Q. Did you work then? A. No, sir.

"Q. So you actually worked around 50 weeks? A. Yes, sir.

"Q. And some 250 days? A. Yes, sir."

The appellant contends that under the above evidence it is obvious that the appellee did not work "substantially the whole of the year" within the meaning of Article 8309, Subsection 1, and the appellee concedes that this is true. It contends also that this evidence was no evidence eliminating Subsection 2 of said Article 8309, Sec. 1, and that therefore since it was incumbent upon him to show that his wage rate could not be computed under Subsection 2 there was no evidence or basis for the finding by the court or the jury under the provisions of Subsection 3 of said Article 8309, Sec. 1. Appellant relies upon the recent case of Texas Employers' Insurance Association v. Ford, 153 Tex. 470, 271 S.W.2d 397. In that case, in an opinion by Chief Justice Hickman, the Supreme Court held that resort to Subsection 3 should never be permitted unless by competent testimony Subsections 1 and 2 have been eliminated. Appellant also points out that under the holding in Texas Employers' Insurance Association v. McKay, Tex.Civ.App., 205 S. W.2d 833, 837; Id., 146 Tex. 569, 210 S.W. 2d 147, it was held that "it has likewise been judicially determined that the term 'substantially the whole of the year' as used in compensation cases means substantially 300 days of labor." Appellant argues that Holmes' testimony in this case amounted to no more than the statement that if there were men on the job who had worked on the loading rack for more than a year, $2.25 per hour was the standard wage rate for such men who had worked for more than a year on this same type of work at Pure Oil, and does not go so far as to amount to testimony that there were men who did or did not work for substantially the whole of the year on that type of work.

■ Ordinarily, the rules laid down in the two cases quoted from and cited by appellant would require the conclusion that there was no evidence in the case which would eliminate Subsection 2 as a basis for computing the appellee's average weekly

wages. This is obviously true in the consideration of the case of a migratory worker, or one whose work is seasonal in character. We believe the present case presents a different situation. The appellee was regularly employed at the Pure Oil Company's oil refinery in Jefferson County and had been for several years before his injury. His earnings for the year preceding the injury amounted to $4,743.84. He testified that he knew of no other workman who had worked the whole of the year preceding his injury in that employment, and this means he knew of no workman who had worked as much as 300 days in that year. While it appears that when a workman employed at that plant for 9 years did not know of any workman who had worked 300 days of the preceding year on that job, it might be inferred that if one had done such work for that many days of the year he would have known about it. However, under the construction of similar testimony in the case of Texas Employers' Insurance Association v. Ford, supra, this amounted only to testimony that the witness did not know whether any facts existed which would enable the court to determine his average weekly wages under Subsection 2. In the case before us, however, we take judicial knowledge of the fact, and the trial court could do so, that in Jefferson County there are many large oil refineries of oil companies whose business is nationwide. The Pure Oil Company, Atlantic Refining Company, Magnolia Petroleum Company, Gulf Oil Corporation, Texas Company, The Koppers Company, Jefferson Chemical Company and Neches-Butane Company operate large refineries in that county. It is a fact that is of general knowledge in that county that in these large refineries no workman works 300 days a year. The five-day week and eight-hour day is a regularly accepted schedule of employment for all work in those industries, and this has been true for the past five years and more. This is such a well-known fact that it probably accounts for the limited questioning of the appellee while he was a witness in regard to his wage rate and of the payroll supervisor of the employer. Counsel asked appellee what his wage rate was on his job and he testified that it was $2.25 an hour. Obviously, he and his counsel both assumed that the announcement of a wage rate of $2.25 an hour meant wages of $90 per week, for the customary 40-hour week.

In view of the testimony of appellee himself that he had worked at this large refinery for several years, and on the loading rack for about six months, and knew of no workman who had worked on the loading rack who worked as much as 300 days a year; and in view of the court's judicial knowledge that the 40-hour week (five days at eight hours a day) is the general schedule of work at such a large refinery in Jefferson County, the trial court was justified in holding that it was shown, as a matter of law, that no workman worked on the loading racks 300 days a year. This is especially true since no issue was made of the wage rate on the trial, and no evidence was introduced by appellant to combat appellee's position. Texas Employers' Ins. Ass'n v. Locke, Tex.Civ.App., 224 S.W. 2d 755. Subsection 2 of the Act was therefore eliminated.

Under Subsection 3 of Article 8309, Sec. 1, it is provided that, "When by reason of the shortness of the time of the employment of the employee, or other employees engaged in the same class of work in the manner and for the length of time specified in the above Subsections 1 and 2, or other good and sufficient reasons it is impracticable to compute the average weekly wages as above defined, it shall be computed by the Board in any manner which may seem just and fair to both parties." We think that it was both impractical and impossible to compute appellee's wages under either Subsections 1 or 2. The trial court was fully authorized to compute the average weekly wages of the appellee from the undisputed testimony before it. From this testimony we think $90 was the smallest amount which the trial court could have found, in view of his year's wages of $4,743.84.

The appellant's Points 1, 2, 3, and 4 are overruled.

The appellee has pointed out in his brief and supplemental brief that the appellant company had paid appellee compensation at the rate of $25 per week for five weeks and contends that under the case of Texas Employers' Insurance Ass'n v. Spivey, Tex.Civ.App., 286 S.W.2d 197, the appellant could not have been prejudiced by the court's finding in this case. We believe that that case has no application here because the matter of the maximum of $25 per week is of no concern here. This case is not concerned with compensation for total disability, but for a partial loss of use of a leg of 17½ per cent and the actual wage rate of the injured employee is of great importance, since payments must be provided for and calculated in the manner which was employed by the court in its judgment. That calculation is the one determined in the case of Texas Employers' Insurance Association v. Holmes, 145 Tex. 158, 196 S.W.2d 390.

The appellant's fifth and sixth points are as follows:

### "Fifth Point of Error

■ "Since no special issues were submitted on the question of whether appellee was totally and temporarily disabled as a result of the alleged accident, the trial court erred in supplying its own fact finding that appellee was totally and temporarily disabled for a period of five weeks after the date of this accident and entering judgment based on this finding."

### "Sixth Point of Error

"Since appellant paid workmen's compensation benefits to appellee in the sum of $125.00, the trial court erred in failing to credit such amount against the judgment entered against it."

The jury in its verdict in this case found that appellee's partial loss of the use of his right leg began on the date of the accident, July 6, 1952. The court found that appellant had already paid appellee $125 ($25 per week for five weeks) after the date of his injury. The appellee, under the jury's findings, was entitled to judgment for compensation for a specific injury for 200 weeks and no more. On the authority of Texas Employers' Insurance Association v. Whitaker, Tex.Civ.App., 274 S.W.2d 578, and cases cited in that opinion, the appellant here should have been given credit for $125 already paid by it to the appellee. Sec. 12 of Article 8306 provides that the permanent loss of the use of a member shall draw the same compensation as the loss of that member, but that this shall be in lieu of all other compensation in other cases. We believe appellant's Points 5 and 6 should be sustained and the judgment of the district court should be reformed so as to award the appellee compensation benefits for 200 weeks for 17½ per cent permanent partial loss of the use of his right leg, with credit to be allowed the appellant for $125 already paid by it to appellee.

The judgment of the trial court, as reformed above, is affirmed.

The costs of the appeal are taxed four-fifths against appellant and one-fifth against appellee.