GIBBS et al. v. UNITED STATES GUARANTEE CO.

No. 9769.

Court of Civil Appeals of Texas. Austin.

Feb. 23, 1949.

Rehearing Denied March 16, 1949.

Board of Insurance Commissioners of the State of Texas, Marvin Hall, Fire Insurance Commissioner of Texas, George Butler, Life Insurance Commissioner of Texas and Chairman of the Board of Insurance Commissioners of Texas, and Price Daniel, Attorney General of Texas, appellants, in their respective official capacities, for the purpose of obtaining a judgment declaring "that Senate Bill no. 233, Acts 1945, 49th Leg., p. 207, ch. 160 [Vernon's Ann.Civ.St. art. 4698a], does not prohibit the Board of Insurance Commissioners of Texas from approving different rates for different insurers for the same risk or risks on the types of insurance covered by said statute; that said Board is empowered to approve such different rates for different insurers, and is required to approve such rates as filed by any insurer unless it finds that such filing does not meet the requirements of the statute; that the construction placed upon said statute in Opinion No. O-6590 of the Attorney General of Texas is incorrect; and that the holding contained in said Opinion is erroneous."

Trial without a jury resulted in a judgment containing the following declarations of law:

"(1) That Senate Bill No. 233, Acts 1945, 49th Leg. p. 207, ch. 160, does not deny to the Board of Insurance Commissioners of Texas the power to approve different rates for fidelity, surety and guaranty bonds for different insurers for the same risk or risks;

"(2) that under said statute said Board is empowered to approve rates for the plaintiff which are different from the rates approved for other insurers for the same risk or risks, provided that each of such rates conforms to the standards prescribed by said statutes, and particularly by Subdivision 3 of Section 2 thereof;

"(3) that said Board is required to approve rates filed by the plaintiff in the manner required by said statute even though such rates differ from the rates approved for other insurers for the same risk or risks unless the Board finds that the rates so filed do not conform to the standards prescribed by said statute, and partic-

Price Daniel, Atty. Gen., Ned McDaniel and Chas. E. Crenshaw, Asst. Attys. Gen., and Thompson, Knight, Harris, Wright & Weisberg, Will C. Thompson, and William H. Neary, all of Dallas, for appellants.

Looney, Clark & Moorhead, Everett L. Looney, and R. Dean Moorhead, all of Austin, for appellee.

HUGHES, Justice.

Appellee, United States Guarantee Company, a corporation authorized to engage in the casualty and bond insurance business in this State, sued J. P. Gibbs, Casualty Insurance Commissioner and member of the

ularly by Subdivision 3 of Section 2 thereof;

"(4) that the requirement in Subdivision 3 of Section 2 of said statute that rates shall be 'non-confiscatory as to any class of insurer' does not authorize or require the Board of Insurance Commissioners to establish a single or uniform rate for each risk or risks in connection with fidelity, surety and guaranty bonds and to compel all insurers to adhere to such rate;

"(5) and that insofar as Opinion No. O-6590 of the Attorney General of Texas holds that said statute does not authorize the approval by the Board of different rates for different insurers for the same risk or risks and that said statute would be unconstitutional if construed to authorize such approval, said Opinion No. O-6590 is incorrect and erroneous."

Senate Bill 233, supra, appears as Art. 4698a, V.A.C.S., and, generally speaking, authorized control of the business of casualty, fidelity, surety and guarantee insurance by the Board of Insurance Commissioners of Texas.

While the parties are very careful in their choice of words in framing the issue before the court, we have no difficulty in understanding that the Board desires S.B. 233 interpreted so as to permit it to prescribe uniform rates for the various kinds of insurance covered by the Act which must be adhered to by all companies who sell such insurance, and that appellee desires a contrary construction.

The controversy, in its practical form, is this: Appellee has had long experience in selling the kinds of insurance covered by S.B. 233. Until 1945 the rates to be charged for such insurance were not regulated by law. After S.B. 233 was enacted the Board fixed rates for all affected insurers to charge which rates were higher than appellee had theretofore charged and were higher than it desired to charge. This seemingly unusual desire is explained by the suggestion that appellee so carefully selects its risks and so efficiently conducts its business that it can afford to sell insurance cheaper than other companies. Of course the ultimate result of this would be that appellee would be in a most favored position to acquire most, if not all, of this type of insurance business.

We are not in the least concerned with the question of whether rates to be charged for these types of insurance should be uniform or competitive. This is a legislative problem. Our only concern is to determine, if we can, what the Legislature has done in this regard.

Appellee concedes that S.B. 233 is ambiguous and therefore presses upon us matters outside the limits of the Act as bearing upon its proper construction and as evidence of the legislative intent.

S.B. 233 as originally introduced in the Legislature contained this provision:

"The Board shall not approve different rates for risks in a given classification for different insurers or classes of insurers."

This provision was deleted by an amendment made by the House of Representatives and concurred in by the Senate.

Our attention is also called to a letter written by Hon. W. W. Roark, Chairman of the House Committee on Insurance and author of the amendment which deleted the above provision, to the Attorney General of Texas, in which he stated:

"It was the intent of the author of the amendment and the intent of the Legislature in adopting the amendment herein referred to, that nothing in the act should be construed as preventing the Board from approving different rates for risks in a given classification for different insurers or classes of insurers, or, in other words, that the door to competition should be closed in the making of fidelity and surety bonds in this State."

Appellants, on the other hand, call our attention to a so-called "Model Bill" which was in existence when S.B. 233 was passed by the Legislature and which apparently was used by the authors of S.B. 233 as a framework or basis for drafting S.B. 233.

From this it is argued that differences between the Model Bill and S.B. 233 are highly significant and show a legislative intent contrary to that expressed by Mr. Roark. It would be very tedious to set out

all of these differences, such as omissions, additions and alterations and, in our opinion, would serve no useful purpose.

 We are of the opinion that no effect can be given to any of the matters referred to above as indicating legislative intent, for the reason that S.B. 233 is by its own terms sufficiently clear to show that uniform, as opposed to competitive, rates were contemplated by the Legislature.

The caption of S.B. 233 provides, in part, that it is an act "authorizing the control by the Board of Insurance Commissioners of the State of Texas of the business of casualty, fidelity, surety and guaranty insurance; providing for the making and filing and approval or disapproval of rates * * *."

The emergency clause of this Act provides, in part, that:

"The fact that there is no law enabling the Board of Insurance Commissioners to regulate many of the various lines of casualty, fidelity, surety and guaranty business *as to the rates collected therefor* in this state, creates * * *."

 It would seem, then, that it was clearly the purpose of the Legislature in enacting S.B. 233 to empower the Board of Insurance Commissioners to regulate rates charged for the types of insurance affected by the Act. This power of regulation, unless expressly restricted, includes the power to prescribe absolute rates. Community Natural Gas Co. v. Natural Gas & Fuel Co., Tex.Civ.App., Austin, 34 S.W.2d 900.

 We are satisfied that the Act as a whole is consistent with the purposes expressed in the emergency clause and that it contains no prohibition against the Board prescribing absolute rates.

Section 2 of the Act provides:

"Sec. 2. All rates shall be made in accordance with the following provisions:

"1. Due consideration shall be given to the past and prospective loss experience within and outside the state, to catastrophe hazards, if any, to expenses of operation, to a reasonable margin for profit and contingencies, and to all other relevant factors, within and outside the state.

"2. Risks may be grouped by classifications for the establishment of rates and minimum premiums. Classification rates may be modified to produce rates for individual risks in accordance with rating plans which establish standards for measuring variations in such risks on the basis of any or all of the factors mentioned in the preceding paragraph.

"3. Rates shall be reasonable, adequate, not unfairly discriminatory, and non-confiscatory as to any class of insurer."

Sec. 3 of the Act, in part, provides:

"Sec. 3. (a) Every insurer shall file with the Board every manual of classifications, rules and rates, every rating plan and every modification of any of the foregoing which it proposes to use. Every such filing shall indicate the character and extent of the coverage contemplated and shall be accompanied by the policies and endorsement forms proposed to be used, and the information upon which the insurer supports the filing.

\* \* \* \* \* \*

"(c) Any filing made pursuant to this Section shall be approved by the Board unless it finds that such filing does not meet the requirements of this Act. * * *

"(d) Any filing for which there is no approved rate shall be deemed approved from the date of filing to the date of such formal approval or disapproval.

"(e) If at any time the Board finds that a filing so approved no longer meets the requirements of this Act, it may, after a hearing held on not less than twenty days' notice specifying the matters to be considered at such hearing, to every insurer and rating organization which made such filing, issue an order withdrawing its approval thereof. Said order shall specify in what respects the Board finds that such filing no longer meets the requirements of this Act and shall be effective not less than thirty days after its issuance.

\* \* \* \* \* \*

"(g) Until the insurer shall make filings, as provided herein, and the same shall be approved, or become effective under the terms hereof, and the Board shall have approved other or different classifications, rules, rates or rating plans, policy forms or endorsements, under this Act, the rates, rules, classifications, rating plans and policy

forms now in use by the insurers now writing the character of insurance herein defined in this state shall remain in effect."

And in Section 7 we find this provision:

"The Board shall, after due consideration, promulgate reasonable rules and statistical plans, which may be modified from time to time and which shall be used thereafter by each insurer in the recording and reporting of its loss experience and such other data as may be required, in order that the total loss and expense experience of all insurers may be made available at least biennially in such form and detail as may be necessary to aid in determining whether rating plans comply with the standards set forth in Section 2."

The provisions of Sec. 3 of the Act set out above and other parts of such section evidence realization by the Legislature that the Board was entering an entirely new field of regulation and that it would need all available data and information from the companies engaged in the business to be regulated in order to properly perform its duties. This section also provided for continuation of the insurance businesses involved in accordance with existing rates until such time as the Board was able to determine that such rates did not conform to the standards of the Act.

The rate-making standards set out in Sec. 2 of the Act, coupled with the provisions of Sec. 7 relating to biennial compilation by the Board of data showing total loss and expense experience of all insurers to aid in determining whether rating plans comply with the standards set forth in Sec. 2, exclude in our opinion, any plausible contention that rates may be permanently based for each company upon its individual experience alone. As indicated above, this was temporarily permissible under the provision of Sec. 3 of the Act, but the Board was expressly authorized to withdraw approval of any rating plan upon finding that such plan "no longer meets the requirements of this Act."

The requirements of the Act are, as we construe Sections 2 and 7, that the rate-making standards are to be measured by and fitted to a composite rate structure created by consideration of all relevant factors on an industry wide basis, within and without the State. For any given past period of time these factors would not be variable and hence a rate based thereon must be constant as to all insurers unless it is to violate the standards of the Act designed to prevent discrimination, confiscation and unreasonableness.

It cannot be seriously asserted that our construction of this Act compels an insurer to charge and retain exorbitant insurance premiums against its will, because Sec. 8 of the Act expressly reserves the right of an insurer to share its profits with policyholders.

Nor does our construction of S.B. 233 conflict with any established public policy of this State. In the fields of workmen's compensation, automobile and title insurance, the Legislature has provided for the establishment of uniform premium rates.

Since this suit is for a declaratory judgment the inference is that as yet there has been no actual invasion of appellee's rights, even if the Board and this Court have improperly construed S.B. 233. This being true the problem presented, while technically perhaps a judicial one, is in reality legislative and the Legislature being presently in session may give the matter such attention as it deserves.

The judgment of the trial court is reversed and judgment is here rendered that appellee take nothing by its suit.